IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ANTONIO ANGEL CASTILLO and JUAN
JOSE LEON LOZA, individually and on
behalf of others similarly situated,**

    **Petitioners,**

  **v.**             **Civ. No. 25-1074 JB/JFR**

**MARY DE ANDRA-YBARRA, El Paso Field
Office Director, DORA A. CASTRO, Warden
of Otero Processing Center, KRISTI NOEM,
Secretary of U.S. Department of Homeland
Security, PAMELA BONDI, U.S. Attorney
General, SIRCE OWEN, Acting Director of
Executive Office for Immigration Review,
OTERO IMMIGRATION COURT, and
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW,**

    **Respondents.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION[1]**

  **THIS MATTER** is before the Court on Petitioners' *Motion for Temporary Restraining
Order*, Doc. 3, filed contemporaneously with a 'Brief in Support,' Doc. 4, on November 3, 2025,
and Petitioners' *Amended Motion for Temporary Restraining Order*, filed November 6, 2025,
Doc. 5. The Court held a motion hearing on November 19, 2025. *See* Docs. 6-7. The
undersigned, having reviewed the record and relevant law, recommends that Petitioners'
*Amended Motion for Temporary Restraining Order* (Doc. 5) be **GRANTED IN PART** and

---

[1] By an 'Order of Reference Relating to Prisoner Cases' filed October 31, 2025, the presiding judge referred this
matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend
an ultimate disposition of the case, in accordance with 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Va. Beach Fed. Sav. &
Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990). Doc. 2.

**DENIED IN PART**, as specified herein. The undersigned further recommends that Petitioners'

original *Motion for Temporary Restraining Order* (Doc. 3) be **DENIED AS MOOT**.

## I.  PROCEDURAL BACKGROUND

On October 1, 2025, Petitioners Antonio Angel Castillo ("Castillo") and Juan Jose Leon

Loza ("Loza") filed a 'Class Action Complaint and Petition for Writ of Habeas Corpus'

("Petition"). *See generally* Doc. 1. Both Petitioners are noncitizens detained at the Otero

County Processing Center in Chaparral, New Mexico. *See id.* at 1, 4 ¶ 11. Petitioners seek to

represent two classes of noncitizens apprehended and processed in New Mexico: (1) a "Bond

Denial Class," for Respondents' alleged misapplication of the mandatory detention provisions of

8 U.S.C. § 1225(b)(2) to entirely deny bond hearings to detainees apprehended in the interior,

who would otherwise be entitled to a bond hearing under 8 U.S.C. § 1226(a); and (2) a "Bond

Appeal Class," for Respondents' alleged systematic invocation of the automatic stay provisions

set forth in 8 C.F.R. § 1003.19(i)(2) by filing Form EOIR-43 whenever a detainee receives a

favorable bond decision, ergo effectively rendering the 8 U.S.C. § 1226(a) bond hearing process

illusory. *See* Doc. 1 at 4-5 ¶¶ 10-12, 11 ¶ 32, 12 ¶ 35, 17-19 ¶¶ 55-64.

Based on this alleged misconduct, Petitioners assert four causes of action. *Id.* at 19-22 ¶¶

65-81. With respect to the alleged misclassification of detainees (i.e., the Bond Hearing Class),

Petitioners allege violations of 8 U.S.C. § 1226(a), Doc. 1 at 19-20 ¶¶ 65-68 (Count 1), and the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, Doc. 1 at 20 ¶¶ 69-72 (Count

2). As to the allegedly impermissible automatic stay (i.e., the Bond Appeal Class), Petitioners

allege violations of the Fifth Amendment's Due Process Clause, Doc. 1 at 20-21 ¶¶ 73-76 (Count

3), and the APA, 5 U.S.C. §§ 551 *et seq.*, Doc. 1 at 21-22 ¶¶ 77-81 (Count 4). Petitioners assert

these claims against: (1) Mary de Andra-Ybarra, the Field Office Director of the El Paso Field

Office of the U.S. Immigration and Customs Enforcement's ("ICE") Enforcement and Removal Operations division, Doc. 1 at 7 ¶ 20; (2) Dora A. Castro, the Warden of Otero Processing Center in Chaparral, New Mexico, *id.* at 8 ¶ 21; (3) Kristi Noem, the Secretary of the U.S. Department of Homeland Security ("DHS"), *id.* at ¶ 22; (4) Pamela Bondi, the U.S. Attorney General, *id.* at ¶ 24; (5) Sirce Owen, the Acting Director of the Executive Office for Immigration Review, *id.* at 9 ¶ 26; (6) the Otero Immigration Court, *id.* at ¶ 27; and (7) the Executive Office for Immigration Review ("EOIR"), *id.* at 8 ¶ 25.  All individually named Respondents (i.e., Andra-Ybarra, Castro, Noem, Bondi, and Owen) are sued in their official capacities.  *See id.* at 7-9 ¶¶ 20-22, 24, 26.

The Court held a motion hearing on Petitioners' *Amended Motion for Temporary Restraining Order* (Doc. 5) on November 19, 2025.  *See* Docs. 6-7.  Although Defendants have yet to file appearances, Ryan Posey, an Assistant United States Attorney ("AUSA") for the District of New Mexico, attended on behalf of the Government Defendants.  *See* Doc. 7.

## II.  <u>FACTUAL BACKGROUND</u>

The source of each Petitioner's claim rise from DHS' 'Interim Guidance Regarding Detention Authority for Applicants for Admission' issued on July 8, 2025.  *See generally* Doc. 4 at 13-15.  This guidance declared that *all* people who entered the U.S. without inspection were deemed "applicants for admission" under 8 U.S.C. § 1225(b)(2)(A), and were therefore subject to mandatory detention.  *See id.*

On September 5, 2025, the Board of Immigration Appeals ("BIA") decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  The BIA adopted the argument presented in the 'Interim Guidance Regarding Detention Authority for Applicants for Admission' and held

that Immigration Judges ("IJs") lack authority to hear bond requests for noncitizens who are present in the U.S. without admission. *See id.*

### A. **Petitioner Loza**

Petitioner Loza is forty-nine years old and a citizen and national of Mexico. Doc. 1 at 16 ¶ 52. He first arrived in the U.S. around August 1999, without inspection. *Id.*; *see also* Doc. 4 at 7 ("Petitioners previously entered the United States without inspection . . . ."). Petitioner Loza resides in New Mexico, where he owns two restaurants (one in Artesia, New Mexico, and the other in Ruidoso, New Mexico) that, in total, employs twenty-five people. *See* Doc. 1 at 7 ¶ 19; Doc. 5 at 11 ¶¶ 5-6. Additionally, Petitioner Loza has three children who are U.S. citizens, two of whom he financially supports while they attend college. *See* Doc. 1 at 7 ¶ 19; Doc. 5 at 11 ¶ 4.

On August 16, 2025, Petitioner Loza "was detained at a check point located in the interior of the United States," and has since been held at the Otero County Processing Center. *Id.* at 16 ¶ 52. Despite being detained in the interior of the U.S., and the above-mentioned facts about Petitioner Loza's pre-detention residence and involvement in the U.S., he was deemed an "applicant for admission" ineligible for a bond hearing under 8 U.S.C. § 1225(b)(2). Doc. 1 at 17 ¶ 54. In further support that Petitioner Loza was misclassified as an "applicant for admission," the Petition also notes that Petitioner Loza was previously detained but granted bond by an IJ around February 2020. *Id.*

### B. **Petitioner Castillo**

Petitioner Castillo is thirty-three years old and a citizen and national of Mexico. *Id.* at 14 ¶ 40. He first arrived in the U.S. as a minor in 2001, without inspection, and was raised in El Paso, Texas, until he was eighteen years old. *Id.*; *see also* Doc. 4 at 7 ("Petitioners previously

entered the United States without inspection . . . .").  At an unspecified date, Petitioner Castillo's abusive stepfather "escorted Mr. Castillo to the international bridge between the [U.S.] and Mexico and kicked Mr. Castillo out of the country."  Doc. 1 at 14 ¶ 40.

Petitioner Castillo reentered the U.S. on July 1, 2023.  *Id.* at ¶ 41.  At an unspecified date, ICE issued Form I-200 (Warrant of Arrest), *id.* at 6 ¶ 18, and then arrested Petitioner Castillo on December 29, 2024, *id.* at 14 ¶ 41, "in El Paso, Texas, without setting a bond," *id.* at 6 ¶ 18, for a pending burglary charge "from 15 years ago," *id.* at 14 ¶ 41.  Shortly thereafter, on January 3, 2025, Petitioner Castillo was detained.  Doc. 5 at 6 ¶ 3.  Petitioner Castillo's burglary charges were dismissed in March 2025.  Doc. 1 at 14 ¶ 41.

Pursuant to Petitioner Castillo's request, an IJ held a custody redetermination review on April 28, 2025.  *See id.* at 6 ¶ 18, 14 ¶ 42.  The IJ denied Petitioner Castillo bond based on the (ultimately incorrect) claim that Plaintiff had been arrested for domestic violence charges.  *See id.*; Doc. 5 at 6 ¶ 3.

Petitioner Castillo appealed this determination to the BIA on April 29, 2025.  Doc. 1 at 6 ¶ 18.  *But see* Doc. 5 at 6 ¶ 5 (listing the date of appeal as April 30, 2025).  In both the aforementioned hearing and appellate briefing, DHS alleged that Petitioner Castillo had past criminal activity warranting the denial of bond, but at no point did DHS raise arguments opposing jurisdiction.  *See* Doc. 1 at 14-15 ¶¶ 42-44.

On August 20, 2025, the BIA held that the IJ's denial was clearly erroneous (because Petitioner Castillo had never been arrested for domestic violence) and remanded the bond matter to the IJ to continue exercising jurisdiction and issue a new order.  *Id.* at 6 ¶ 18, 15 ¶ 46.  In doing so, the BIA made no mention of jurisdictional issues.  *Id.* at 15 ¶ 46.

Pursuant to the BIA's order, Petitioner Castillo had another bond hearing on August 28, 2025. *Id.* at 6 ¶ 18. During this hearing, DHS argued for the first time "that the court did not have jurisdiction because he was deemed an 'applicant for admission' and was not eligible for bond." *Id.* at 15 ¶ 47. Nevertheless, "[t]he [IJ] found jurisdiction under [8 U.S.C.] § 1226(a)." *id.* at 15 ¶ 47; *see also id.* at 6 ¶ 18. The IJ further found that Petitioner Castillo proved, by clear and convincing evidence, that he was neither a danger to society nor a flight risk. *Id.* at 6 ¶ 18, 15 ¶ 47. Accordingly, the IJ ordered that Petitioner Castillo be released on a $20,000 bond. *Id.*

However, on August 29, 2025, DHS filed Form EOIR-43 (Notice of Intent to Appeal Custody Redetermination), which invoked automatic-stay provisions under 8 C.F.R. § 1003.19(i)(2). Doc. 1 at 15 ¶ 48. On September 10, 2025, DHS formally filed Form EOIR-26 (Notice of Appeal from a Decision of an Immigration Judge). *Id.* at 16 ¶ 49. "DHS supplemented the form with a brief and argued that the IJ lacked jurisdiction to hear bond requests or to grant bond to any noncitizen present in the United States without admission." *Id.*

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 65

The requirements for a Temporary Restraining Order ("TRO") are "remarkably similar" to those for a preliminary injunction order. *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892, 908 (10th Cir. 2022) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)) (quotation marks omitted). The primary differences between a TRO and a preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are limited in duration to fourteen (14) days. *See* FED. R. CIV. P. 65(b)(1)-(2). In both cases, however, preliminary injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request

granted. *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003). The Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) ("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." (quoting *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) (quotation marks omitted))).

Preliminary relief under Rule 65 "is an 'extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 112 (10th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) ("[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." (internal quotation marks and citation omitted)). The movant must show:

> (1) a substantial likelihood that they will ultimately succeed on the merits of their suit; (2) that they are likely to suffer irreparable harm in the absence of preliminary relief; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) if issued, the injunction will not adversely affect the public interest.

*Rocky Mountain Gun Owners*, 121 F.4th at 112 (citing *Winter*, 555 U.S. at 20); *cf. Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) ("In order to receive a preliminary injunction, the [movant] must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3)

that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." (quotation marks and citation omitted)).

"The first two factors are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Likewise, it is insufficient that a moving party demonstrate that there is only a "possibility, rather than a likelihood," of either success on the merits or irreparable harm. *Diné Citizens*, 839 F.3d at 1282 (holding that a relaxed test for, is "inconsistent with the Supreme Court's recent decision in *Winter*," because although *Winter* dealt with the irreparable-harm factor, the "rationale seems to apply with equal force" to the likelihood-of-success factor (citing *Winter*, 555 U.S. at 22)).

"To demonstrate a substantial likelihood of success on the merits of its claim . . . [the movant] was required to present a prima facie case showing a reasonable probability that it will ultimately be entitled to the relief sought." *Salt Lake Trib. Pub. Co.*, 320 F.3d at 1100 (internal quotation marks and citation omitted). However, a movant "is not required to prove his case in full at a preliminary-injunction hearing." *Camenisch*, 451 U.S. at 395. Moreover, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* On the other hand, an irreparable harm/injury is "harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Pub. Co. v. AT & T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003) (citing *Tri-State Generation*, 805 F.2d at 355).

Regarding the last two factors, when the Government is the opposing party, as is the case here, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. But, as the Supreme Court of the United States has warned, "courts must be mindful that the Government's

role as the respondent in every removal proceeding does not make the public interest in each individual one negligible, as some courts have concluded." *Id.*

Although preliminary relief is already generally viewed as an "extraordinary remedy," *Rocky Mountain Gun Owners*, 121 F.4th at 112, where a party seeks a "disfavored" form of preliminary injunctive relief, the Tenth Circuit requires a heightened showing, *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial." *Id.* Rather, "a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* "To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: [H]e must make a 'strong showing' that these tilt in h[is] favor." *Id.*

### B. All Writs Act, 28 U.S.C. § 1651

In addition to issuing a standard TRO pursuant to Federal Rule of Civil Procedure 65, the All Writs Act, 28 U.S.C. § 1651, provides an independent basis for interim relief where "necessary or appropriate" to protect a court's jurisdiction. 28 U.S.C. § 1651(a); *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172-74 (1977). Thus, courts have recognized that they possess jurisdiction to enjoin both transfer and removal while a habeas petition is pending, pursuant to either Federal Rule of Civil Procedure 65 or the All Writs Act. *See, e.g.*, *Arostegui-Maldonado v. Baltazar*, No. 25-cv-2205, 2025 WL 2280357, at *9 (D. Colo. Aug. 8, 2025) (invoking All Writs Act to prohibit ICE from removing petitioner from the U.S. or transferring him outside the district during pendency of habeas proceeding), *appeal docketed*, No. 25-1377 (10th Cir. Oct. 1, 2025); *Escalante v. Bondi*, No. 25-cv-3051, 2025 WL 2212104, at *1 (D. Minn.

July 31, 2025) (issuing TRO to restrain transfer pending resolution of a habeas petition

challenging detention under 8 U.S.C. § 1226(a), *report and recommendation adopted sub nom.*

*O.E. v. Bondi*, No. 25-cv-3051, 2025 WL 2235056 (Aug. 4, 2025)).

## IV. <u>ANALYSIS</u>[2]

Petitioners move to "enjoin[] the Defendants from proceeding on removal cases for Mr.

Castillo and Mr. Loza" *and* prohibit "transferring [the named Petitioners] out of Otero

Processing Center in Chapparal, New Mexico."  Doc. 5 at 3.  However, the 'Brief in Support,'

Doc. 4, filed contemporaneously with the original *Motion for Temporary Restraining Order*,

Doc. 3, implies that Petitioners seek injunctive relief requiring compliance with the applicable

due process requirements to prevent continuing the constitutional due process deprivations.  *See,*

*e.g.*, Doc. 4 at 11 ("[T]he issuance of a [TRO] serves the public interest because it prevents the

unconstitutional detention of Petitioners."); Doc. 5 at 2 ¶ 6(e) (discussing that Petitioner Loza

will otherwise continue to be wrongfully detained (but pursuant to the statute incorrectly

governing his detention, 8 U.S.C. § 1225(b)(2), mandates detention with no opportunity for

bond)).

For the reasons set forth below, the undersigned declines to recommend enjoining

removal proceedings entirely, *infra* Section IV.A, and instead recommends maintaining the

status quo by ordering compliance with the due-process protections to which Petitioners are

entitled, *infra* Sections IV.B-C.  This means allowing Petitioner Castillo to post bond already set

---

[2] The Court notes that Respondents have not yet filed their appearances.  Meaning, the Court has not served notice of Petitioners' motions (Docs. 3, 5) on Respondents.  Nevertheless, Rule 65(b)(1) authorizes courts to issue a TRO without notice to the non-movant(s) if: (A) "specific facts in an affidavit or a verified complaint clearly show that immediate *and* irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition;" and (B) the movant's counsel certifies, in writing, the "efforts made to give notice *and* the reasons why it should not be required."  FED. R. CIV. P. 65(b)(1)(A)-(B) (emphasis added).  Petitioners satisfied these requirements by certifying in writing, the efforts made to give notice and the reasons why it should not be required.  *See* Doc. 5 at 4-5 ¶¶ 3-7; *accord* FED. R. CIV. P. 65(b)(1)(A)-(B).

by an IJ, and providing Petitioner Loza a bond hearing before an IJ.  Additionally, pursuant to the All Writs Act, the undersigned further recommends prohibiting Respondents from moving Petitioners (if and when in custody) or their immigration proceedings outside the District of New Mexico.  *Infra* Section IV.D.

A. **Enjoining Removal Proceedings**

Petitioners move to enjoin their removal proceedings because although they are challenging their continued detention pursuant to Sections 1225 and 1226, after an order of removal is final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2).  *See* Doc. 5 at 2 ¶¶ 6(d), (f).  The question thus becomes determining the point at which Petitioner's challenge to pre-removal detention becomes moot.

The Supreme Court has concluded that a removal order is administratively final for purposes of detention "once the BIA has reviewed the order (or the time for seeking the BIA's review has expired)."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).  Another district court in the Tenth Circuit handled a similar issue, considering a petitioner's habeas challenge to mandatory detention after a final order of removal was entered.  *See Carbajal v. Holder*, 43 F. Supp. 3d 1184, 1188-90 (D. Colo. 2014).  The petitioner in *Carbajal* challenged his pre-removal detainment, but the court found that the challenge became moot when the BIA affirmed petitioner's removal order.  *Id.* at 1189 ("On that date, the Attorney General's authority to detain Applicant shifted to 8 U.S.C. § 1231(a)(2).").  Additionally, the appeal and final adjudication of removal proceedings can stretch on for multiple months.  *See, e.g.*, *Al-Sadeai v. U.S. Immigr. & Customs Enf't*, 540 F. Supp. 3d 983, 990 (S.D. Cal. 2021) ("As exemplified by Petitioner's case, removal proceedings can stretch on for months."); *Valencia Zapata v. Kaiser*, No. 25-cv-07492, 2025 WL 2741654, at *1 (N.D. Cal. Sep. 26, 2025) ("'[D]ue to the built in procedures,' full

11

removal proceedings 'typically take[ ] place over the course of multiple hearings,' which 'allows time for noncitizens to both gather evidence in support of petitions for relief available in immigration court . . . and seek collateral relief from other components of [the Department of Homeland Security ("DHS")].'" (quoting *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025)) (alterations in original)); *cf. Lopez-Campo v. Raycraft*, No. 25-cv-12486, 2025 WL 2496379, at *5 (E.D. Mich. Aug. 29, 2025) ("Bond appeals before the BIA, on average, take six months to complete." (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025))).  The Court thus finds that Petitioners have not satisfactorily demonstrated the requisite immediacy.  *See* FED. R. CIV. P. 65(b)(1)(A) (requiring movant to "clearly show . . . *immediate* and irreparable injury").

This lack of immediate urgency was further demonstrated by AUSA Posey's request at the November 19th hearing for DHS to have an opportunity to issue a discretionary stay on removal proceedings.  *See* Doc. 7.  Such potential alternative relief undermines the argument that an irreparable injury is likely to occur if not but for the Court's issuance of a TRO.  *See Winter*, 555 U.S. at 20-22.  For these reasons, the undersigned declines recommending that removal proceedings be entirely enjoined.[3]

Nonetheless, applying the Supreme Court's definition of "administratively final," *Johnson*, 594 U.S. at 534-35, and referencing the guidance provided by *Carbajal*, 43 F. Supp. 3d at 1188-90, the undersigned recommends that this Court not find the petition moot until the Petitioner's time to appeal the removal order has expired, or if Petitioner timely appeals, the BIA

---

[3] Additionally, AUSA Posey raised concerns regarding whether the Court has jurisdiction to entirely enjoin removal proceedings.  *See* Doc. 7.  The arguments are currently underdeveloped and thus unpersuasive.  As evidenced by the lack of immediate urgency, *supra* Section IV.A, the Court, by presently declining to issue such relief, promotes a more thorough future decision made with opposing input.

issues a decision on that appeal.  *See Alfredo Molina Ochoa v. Noem*, No. 25-cv-00881, 2025
WL 3125846, at *6 (D.N.M. Nov. 7, 2025) (magistrate judge recommending the same).

### B.  Release of Petitioner Castillo

The Court next turns to the request for the immediate release of Petitioner Castillo,
pursuant to the IJ's conclusion that Petitioner Castillo was neither a flight risk nor a danger to
society.  *See* Doc. 5 at 2 ¶ 6; *id.* at 7 ¶¶ 6-9 (Petitioner Castillo's translated affidavit, discussing
hardship of continued detention); *id.* at 17 (proposed TRO, which orders waiving bond
requirement).

#### 1.  Likelihood of Success on the Merits

Petitioners argue that this continued detention violates the procedural and substantive due
process rights guaranteed by the Fifth Amendment.  Doc. 4 at 5.  The Fifth Amendment's Due
Process Clause prohibits deprivations of life, liberty, and property without due process of law.
*See* U.S. Const. amend. V.  The Due Process Clause extends to all persons, including non-
citizens, regardless of their immigration status.  *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see
also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the
Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings."
(quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

To determine whether detention violates procedural due process, courts apply the
*Mathews v. Eldridge* three-part balancing test.  424 U.S. 319 (1976).  Courts consider:

> (1) the private interest that will be affected by the official action; (2) the risk of an
> erroneous deprivation of such interest through the procedures used, and probable
> value, if any, of additional procedural safeguards; and (3) the Government's
> interest, including the fiscal and administrative burdens that the additional or
> substitute procedures would entail.

*Id.* at 321.  Here, all three *Mathews* factors weigh in favor of Petitioners, ergo showing a likelihood of success on the merits.

### i.  Private Interest

As applied here, the first *Mathews* factor goes to the substantive due process claim. Substantive due process protects individuals from government action that interferes with individuals' fundamental rights.  *See Abdi v. Wray*, 942 F.3d 1019, 1027 (10th Cir. 2019).  "[T]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  In fact, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Here, the automatic stay invoked by DHS does not have a foreseeable end date, since "[i]f the BIA does not resolve the appeal within the ninety-day period, ICE can seek a discretionary stay for an additional 30 days."  *Sampiao v. Hyde*, No. 25-cv-11981, 2025 WL 2607924, at *10 (D. Mass. Sep. 9, 2025) (citing 8 C.F.R. § 1003.6(c)(5)).  Further, the matter can also be referred to the Attorney General, who can stay the case *indefinitely* pending disposition. 8 C.F.R. § 1003.6(d).  Petitioner Castillo thus faces months or years under the automatic stay. *See Lopez-Campos*, 2025 WL 2496379, at *5 ("Bond appeals before the BIA, on average, take six months to complete." (citing *Rodriguez*, 779 F. Supp. 3d at 1245)); *Singh v. Lewis*, No. 25-cv-96, 2025 WL 2699219, at *3 (W.D. Ky. Sep. 22, 2025) (citing same quote); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025) ("[Petitioner] thus faces the possibility of months possibly years under the automatic stay.") (citing *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, *3 (E.D. Mich. Sep. 9, 2025) (stating BIA

"typically take[s] six months or more" to resolve bond appeals)).  Therefore, the Court finds that the first *Mathews* factor strongly favors Petitioner Castillo.  *See Martinez-Elvir v. Olson*, No. 25-CV-589, 2025 WL 3006772, at *11 (W.D. Ky. Oct. 27, 2025); *Barrera*, 2025 WL 2690565, at *6; *Singh*, 2025 WL 2699219, at *4.

### ii.  Risk of Erroneous Deprivation

The second *Mathews* factor addresses the risk of erroneous deprivation of Petitioner Castillo's liberty interest due to the automatic stay procedure.  *Mathews*, 424 U.S. at 335.

At Petitioner Castillo's bond hearing, after it was originally remanded by the BIA, the IJ heard testimony, reviewed evidence, and made an independent decision that Petitioner Castillo was eligible for release and that bond was appropriate.  Doc. 1 at 6 ¶ 18, 15 ¶ 47; *accord* 8 C.F.R. § 1003.19(a).  Despite this, the automatic stay permits the Government to "usurp" the IJ's role and unilaterally decide to nevertheless detain Petitioner, in contrast with the IJ's express ruling.  *See Sampiao*, 2025 WL 2607924, at *10; *Singh*, 2025 WL 2699219, at *4.  The automatic stay provision strips the process of any impartiality, allowing Respondents to act both as the prosecution and the judge in making a unilateral and unreviewed decision as to detention.

The automatic stay is a unilateral decision that is applied *after* an IJ granted bond, and subjects noncitizens to continued detention without any individualized assessment.  *See Puerto-Hernandez v. Lynch*, No. 25-cv-1097, 2025 WL 3012033, at *10-11 (W.D. Mich. Oct. 28, 2025); *Martinez-Elvir*, 2025 WL 3006772, at *12 (first citing *Sampiao*, 2025 WL 2607924, at *10; and then citing *Garcia Jimenez v. Kramer*, No. 25CV3162, 2025 WL 2374223, at *3 (D. Neb. Aug. 14, 2025) ("The risk of deprivation is high because the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing.")).  As Petitioners argue, it is crucial to emphasize that to be granted bond, the noncitizen bears the burden of demonstrating by

clear and convincing evidence that he is neither a flight risk nor a danger to society.  Doc 4 at 9.

Here, Respondents did not argue the merits of the IJ's conclusion that Petitioner Castillo carried

his burden, as required.  *Id.*.  Rather, the appeal of the IJ's decision on remand only argued

jurisdiction, premised on the inapplicable reinterpretation of "applicants for admission"

constituting detention under 8 U.S.C. § 1225(b)(2).  *Id.*; *see id.* at 16-45 (Form EOIR-43, Form

EOIR 26, and supporting memorandum of law).

For these reasons, the Court finds that the second *Mathews* factor weighs in favor of

Petitioner Castillo.

### iii.  United States' Interest

The third and final *Mathews* factor pertains to the United States' interest in the procedure

at issue, as well as the financial or administrative burdens associated with alternative procedures.

*Mathews*, 424 U.S. at 335.  The Court recognizes the Government's strong interest in ensuring

that noncitizens, criminal or otherwise, do not harm citizens or the community and that they

appear for future immigration proceedings.  *See Martinez-Elvir*, 2025 WL 3006772, at *12.

"The Court need not inquire into the motives—ulterior or otherwise—behind Respondents'

invocation of the automatic stay provision, however, because existing statutory and regulatory

safeguards adequately serve the governmental interest in promoting public safety."  *Günaydin v.*

*Trump*, 784 F. Supp. 3d 1175, 1190 (D. Minn. 2025).  But there already existed a procedure for

addressing such concerns: independent and neutrals IJs.  Indeed, the Government's interests here

were addressed by an IJ, who concluded that Petitioner Castillo was neither a danger to the

community nor a flight risk.  Doc. 1 at 6 ¶ 18, 15 ¶ 47; *see Sampiao*, 2025 WL 2607924, at *12

("The government does, indeed, have a legitimate interest in ensuring noncitizens' appearance at

removal proceedings and preventing harms to the community, but noncitizens subject to the

automatic stay regulation have been deemed, subject to a bond order, to *not* pose such risks." (internal citation omitted)).

Additionally, continuing to enforce Petitioner's detention in spite of the neutral arbitrator's findings would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention.  *See Sampiao*, 2025 WL 2607924, at *12.

For these reasons, the Court concludes that the third *Mathews* factor also favors Petitioner.  *See Barrera*, 2025 WL 2690565, at *7; *Singh*, 2025 WL 2699219, at *5.

### 2.    Immediate and Irreparable Risk of Harm

Federal courts have long recognized that the infringement of a constitutional right is an irreparable injury.  *See Free the Nipple-Fort Collins*, 916 F.3d at 805 ("Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury."); *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012) ("[W]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)) (quotation marks omitted)).  Thus, the violation of Petitioner Castillo's Fifth Amendment rights is alone sufficient to establish irreparable harm.  *See Arostegui-Maldonado*, 2025 WL 2280357, at *9.

### 3.    Balancing of Equities and Public Interest

The Court would not usually hold the Government's appeal against it.  *See Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1195 (D. Colo. 2024) ("[T]he Court will not hold the fact that respondents appealed . . . in considering any delay in the immigration proceedings given that [petitioner] does not argue that the appeal was made in bad faith or as a dilatory tactic.").  But the Court understands Petitioner Castillo to argue here that the Government's appeal of the IJ's

bond decision on remand was made in bad faith or as a dilatory tactic. *Cf. Arostegui-Maldonado*, 2025 WL 2280357, at *8 (construing petitioner's argument to imply that Government's appeal on the IJ's decision on remand, in the context of removal proceedings, was made in bad faith because the Tenth Circuit expressly alerted the Government to the meritless arguments).

While "there may be a generalized public interest in the enforcement of the country's immigration laws[,] . . . that cannot mean that Respondents enjoy an unfettered right to detain noncitizens in contravention with their Fifth Amendment rights." *Arostegui-Maldonado*, 2025 WL 2280357, at *10 (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks omitted)). To the contrary, "[w]hen a constitutional right hangs in the balance . . . 'even a temporary loss' usually trumps any harm to the [adverse party]." *Free the Nipple-Fort Collins*, 916 F.3d at 806 (citation omitted).

### 4. **Bond Requirement**

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Tenth Circuit, district courts have "'wide discretion' under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003). This includes the discretion to "determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.'" *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462

(10th Cir. 1987) (quoting *Cont'l Oil Co. v. Frontier Refin. Co.*, 338 F.3d 780, 782 (10th Cir.

1964)).

As Petitioners correctly observe "[a]s the designated fact-finder, the IJ is uniquely

positioned to evaluate flight risk and danger to the community." Doc. 4 at 10. As such, the

Court defers to the IJ's sound discretion and recommends ordering Respondents to immediately

release Petitioner Castillo on the terms set by the IJ, including the bond of $20,000. *See*

*Martinez-Elvir*, 2025 WL 3006772, at *13 (affirming release pursuant to requirements set forth

by IJ); *Puerto-Hernandez*, 2025 WL 3012033, at *11 (same); *Singh*, 2025 WL 2699219 (same);

*Sampiao*, 2025 WL 2607924, at *12 (same).

### C.  Bond Hearing for Petitioner Loza

Petitioners argue that Respondents conflated the definition of "applicant(s) for

admission" to improperly deny noncitizen detainees bond hearings, in violation of the INA.

Doc. 4 at 5. Similarly, the Court now considers the request for ensuring Petitioner Loza receives

proper due process applicable to the appropriate governing statute. *See* Doc. 5 at 2 ¶ 6(e).

As set forth below, the Court concludes that Petitioner Loza's detention is properly

governed by 8 U.S.C. § 1226(a) and he is, therefore, entitled to a bond hearing. *Infra* Sections

IV.C.1-3. Accordingly, the Court further finds grounds to shift the bond hearing evidentiary

burden to the government. *Infra* Section IV.C.4.

#### 1.  Likelihood of Success on the Merits

As articulated in the Petition, the governing statutory framework makes clear that

Petitioner Loza's detention falls under 8 U.S.C. § 1226, not 8 U.S.C § 1225. *See generally* Doc.

1. Section 1225 applies to noncitizens who present themselves at the border seeking initial

admission. By contrast, § 1226(a) governs the arrest and detention of individuals "pending a

decision on whether the alien is to be removed from the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1226(a) (quotation marks omitted)). As the Supreme Court explained, § 1226 establishes a discretionary detention framework, under which noncitizens are entitled to a bond hearing before an IJ to determine whether they present a danger or flight risk. *Jennings*, 583 U.S. at 289-90. Section 1225's mandatory detention provision has no application to long-settled residents like Petitioner Loza who were apprehended inside the United States. Collapsing the two statutes would render § 1226 largely superfluous.

Having determined that Petitioner Loza's detention should have been governed by 8 U.S.C. § 1226(a) and that the denial of a meaningful bond review and his resultant continued detention violates his due process rights, the Court agrees with the judges in this district, as well as other district courts, who have addressed similar matters and finds that Petitioner Loza is entitled to a prompt individualized bond hearing before a neutral IJ. *See, e.g.*, *Salazar v. Dedos*, No. 25-cv-00835, 2025 WL 2676729, at *6 (D.N.M. Sep. 17, 2025); *Kostak v. Trump*, No. 25-1093, 2025 WL 2472136, at *4 (W.D. La. Aug. 27, 2025); *Lopez-Campos*, 2025 WL 2496379, at *10; *Rodriguez*, 779 F. Supp. 3d at 1263; *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *8-9 (D. Mass. July 7, 2025).

### 2. <u>Immediate and Irreparable Risk of Harm</u>

Section 1225 does not apply to Petitioner Loza's circumstances, and denying him the protections of the applicable statute (i.e., 8 U.S.C. § 1226), including an individualized bond hearing, violates both the INA and the Fifth Amendment's guarantee of due process.

Absent an injunction, this infringement of Petitioner Loza's rights will continue; demonstrating an irreparable risk of harm. As previously noted, *supra* Section IV.B.2, federal courts have long recognized that the infringement of a constitutional right is an irreparable

injury.  *Free the Nipple-Fort Collins*, 916 F.3d at 805 ("Most courts consider the infringement of

a constitutional right enough and require no further showing of irreparable injury."); *Awad*, 670

F.3d at 1131 ("[W]hen an alleged constitutional right is involved, most courts hold that no

further showing of irreparable injury is necessary." (quoting *Kikumura*, 242 F.3d at 963)

(quotation marks omitted)).

While constitutional injury is independently sufficient for demonstrating an irreparable

risk of harm, *see Arostegui-Maldonado*, 2025 WL 2280357, at *9, the Court further notes that

Petitioner Loza's detention without due process has separated him from his two restaurants and

family, including three U.S. citizen children, Doc. 5 at 11 ¶ 4.

### 3.  Balancing of Equities and Public Interest

Here, the harm to Respondents is quite limited "because the administrative burden of a

bond hearing is minimal . . . ." *Arostegui-Maldonado*, 2025 WL 2280357, at *10 (quoting *Pham

v. Becerra*, No. 23-cv-01288, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023)) (quotation

marks omitted).  Compare that mere "administrative burden" to the sizeable harm posed to

Petitioner Loza by continued and potentially unnecessary detention.  *Pham*, 2023 WL 2744397,

at *7 ("[T]he imposition of a TRO serves the public interest because it could prevent the

'unnecessary detention' of [petitioner], should an IJ determine that he is 'neither dangerous nor

enough of a flight risk to require detention without bond.'" (quoting *Hernandez v. Sessions*, 872

F.3d 976, 995-96 (9th Cir. 2017))); *Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal.

2020) ("[T]he public interest benefits from a preliminary injunction that expedites a bond

hearing to ensure that no individual is detained in violation of the Due Process Clause.").

For these reasons, the Court finds that the merged balance of equities and public interest

factors favor a preliminary injunction requiring Petitioner Loza to a constitutionally adequate

bond hearing before the IJ.  "Given the length of Petitioner's unlawful detention and the liberty interests at stake, time is of the essence."  *Salazar*, 2025 WL 2676729, at *9.  *Compare id.* at *7 (concerning petitioner improperly detained for "less than three months"), *with* Doc. 5 at 11 ¶ 3 (affirming Petitioner Loza was detained *more* than three months ago, on August 16, 2025).  In accordance with similar cases in this district the undersigned thus recommends that Petitioner Loza receive an individualized bond hearing pursuant to 8 U.S.C. § 1226(a) no later than seven (7) days of the presiding judge's order.  *See Salazar*, 2025 WL 2676729, at *6 (collecting cases); *Alfredo Molina Ochoa*, 2025 WL 3125846, at *13 (same).  However, the undersigned recommends that the Court only order Petitioner Loza's immediate release *if* he is not afforded a bond hearing within seven (7) days.  *See id.*

### 4.  Bond Hearing Proceedings

Given the conclusion immediately above that Petitioner Loza is entitled to a bond hearing pursuant to 8 U.S.C. § 1226, the Court considers, as a final matter, the procedures and evidentiary standards that should apply at the hearing.  Given that such a determination invokes due process, the Court applies the *Mathews* factors previously discussed.  *See supra* Section IV.B.1; *Salazar*, 2025 WL 2676729, at *6-7.

First, the same private interest applicable to Petitioner Castillo applies here: the interest in being free from physical detention.  *Hamdi*, 542 U.S. at 529.  Accordingly, "[t]his Court need not wait another six, twelve, or eighteen months to determine that the first *Mathews* factor weighs in Petitioner's favor.  Petitioner's private interest in being free from detention—and unlawful detention at that—is at stake now.  This factor cuts in Petitioner's favor."  *Salazar*, 2025 WL 2676729, at *7.  As evidenced in *Salazar*, detention need not be prolonged to justify shifting the evidentiary burden.  *Compare id.* (concerning petitioner improperly detained for "less than three

months"), *with* Doc. 5 at 11 ¶ 3 (affirming Petitioner Loza was detained slightly *more* than three months ago, on August 16, 2025).

Second, the risk of erroneous deprivation is high. Not only is the Government culpable for the current deprivation, but "[t]he Government's conduct in this case is not an isolated incident, as cases like this one have cropped up across the country in recent weeks," and the Court has "serious concerns about Petitioner's access to a meaningful bond hearing." *Salazar*, 2025 WL 2676729, at *7. Thus, shifting the burden to the Government at a subsequent bond hearing likely will reduce the risk of the continuing erroneous deprivation of Petitioner's liberty interests." *Id.* at *7.

Third, the Government's interest in detaining Petitioner Loza only outweighs his liberty interests if he is a flight risk or a danger to his community.[4] Although, the Government's interest in ensuring appearance at hearings and protecting the community is certainly weighty, *see L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024) (citing *Zadvydas*, 533 U.S. at 690), this interest dissolves if a noncitizen is neither a flight risk nor dangerous, *Salazar*, 2025 WL 2676729, at *7 ("As noted by the First and Second Circuits, the government, and therefore the public, may save fiscal resources if detention is only used for noncitizens who are proven to be a flight risk or dangerous." (first citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021); and then citing *Velasco Lopez v. Decker*, 978 F.3d. 842, 854 n.11 (2nd Cir. 2020))). Moreover, the Government's burden, if any, is directly attribute to its misclassification of detainees under § 1225, rather than § 1226. Had Petitioner Loza "received the initial custody determination to

---

[4] Additionally, shifting the burden to the Government to justify detention may actually promote the Government's *separate* interest in managing overcrowding at DHS detention facilities. *See Velasco Lopez v. Decker*, 978 F.3d. 842, 854 & n.11 (2nd Cir. 2020) ("Detention costs taxpayers approximately $134 per person, per day, according to ICE's estimates." (citation omitted)). Nor does shifting the burden of proof impose an unreasonable administrative or fiscal burden on the Government. The Government has "vast resources at its disposal to gather information about [Petitioner Loza's] eligibility for bond." *Salazar*, 2025 WL 2676729, at *8.

which he was entitled under § 1226(a), the Government would have had the opportunity to cross-examine or rebut [his] claims that he is not a flight risk or a danger to the community or to argue before the IJ that [Petitioner Loza] failed to meet his burden to prove as much." *Salazar*, 2025 WL 2676729, at *7.

### D. **Prohibition on Transfer or Removal**

The Court next considers Petitioners' request for a preliminary injunction prohibiting Respondents from removing Petitioners from the U.S. or transferring them to a facility outside of the District of New Mexico. Doc. 5 at 3. The Court finds that it has authority to enter an injunction preventing Petitioners'[5] removal from the U.S. and/or transfer from the District of New Mexico during the pendency of these habeas proceedings under the All Writs Act.[6] It thus does not proceed to analyze the scope of its authority to enter the same injunction under 28 U.S.C. § 2241. Moreover, as courts often do when invoking their authority to enter injunctive relief under the All Writs Act, the Court will forego the traditional four-factor preliminary injunction analysis. *See Arostegui-Maldonado*, 2025 WL 2280357, at *11 (citing *N.Y. Tel. Co.*, 434 U.S. at 174 (affirming grant of injunction under the All Writs Act without regard to traditional four factors)).

Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). The Supreme Court "consistently has construed the All Writs Act to authorize a federal court 'to issue such commands . . . as may be necessary or appropriate to effectuate and prevent

---

[5] To clarify, the Court's analysis and conclusions herein only apply to Petitioner Castillo and Petitioner Loza—not the putative classes. *Accord Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999).

[6] In light of the Court's prior conclusions, *supra* Sections IV.A-C, this restriction applies to Petitioner Loza's potential confinement (to be determined by a bond hearing before an IJ) and the location of future proceedings. That is to say, the Court's limitation on transferring proceedings is not to be construed as grounds for the continued confinement of Petitioner Castilla or denial of a bond hearing for Petitioner Loza.

the frustration of orders it has previously issued in the exercise of jurisdiction otherwise obtained.'" *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 40 (1985) (quoting *N.Y. Tel. Co.*, 434 U.S. at 172) (omission in original).

It is true that "jurisdiction attaches on the initial filing for habeas corpus relief and is not destroyed by a transfer of the petitioner." *Arostegui-Maldonado*, 2025 WL 2280357, at *14 (quoting *Serna v. Commandant, USDB-Leavenworth*, 608 F. App'x 713, 714 (10th Cir. 2015) (unpublished)) (internal quotation marks omitted). But such a conclusion is clearly disputed, given the differences in interpretation and application amongst district courts handling comparable immigration matters. *Compare id.* (finding that transfer out of district does not moot habeas corpus claims), *with Alfredo Molina Ochoa*, 2025 WL 3125846, at *14 (disagreeing with district courts citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004) for the proposition that they would lose jurisdiction over a petitioner's transfer outside of the district), *and Gamez Lira v. Noem*, No. 25-cv-00855, 2025 WL 2581710, at *2 (D.N.M. Sep. 5, 2025) (citing *Padilla* for the proposition that "[t]he Supreme Court has held that habeas relief is available only in the district of confinement."). These invocations of the All Writs Act have not been limited to injunctions prohibiting a noncitizen's removal from the United States or transfer out of a district. *See Arostegui-Maldonado*, 2025 WL 2280357, at *14. Moreover, as a Maryland federal court recently observed, "[i]n the immigration context, courts have recently invoked the All Writs Act to preserve their jurisdiction over constitutional challenges to lightning-fast deportations." *Abrego Garcia v. Noem*, No. 25-cv-00951, 2025 WL 2062203, at *6 (D. Md. July 23, 2025).

To clarify, however, such relief enjoins transferring jurisdictions within the U.S. and stays removal from the U.S. Thus, such relief is not a go-around of the undersigned's declination to recommend enjoining removal proceedings. *See supra* Section IV.A; *Immigr.*

*Defs. L. Ctr. v. Noem*, 781 F. Supp. 3d. 1011, 1040-42 (C.D. Cal. 2025) (discussing how "in *Biden v. Texas*, the Supreme Court clarified that 'Section 1252(f)(1) deprives courts of the power to issue a specific category of remedies: those that "enjoin or restrain the operation of" the relevant sections of the statute,' and despite the overlap between a stay and injunctive relief, the Supreme Court clarified the legal differences in *Nken* (citations omitted)); *accord* 5 U.S.C. § 705.

## V.  <u>RECOMMENDATION</u>

For the reasons stated above, the undersigned recommends that Petitioners' *Amended Motion for Temporary Restraining Order* (Doc. 5) be **GRANTED IN PART AND DENIED IN PART** as follows:

1.  The request for enjoining removal proceedings of the two named Petitioners should be **DENIED WITHOUT PREJUDICE**.

2.  Petitioner Castillo should be **RELEASED** with no additional requirements other than the bond conditions previously ordered by the Immigration Judge.

3.  Petitioner Loza should be **GRANTED** a bond hearing, at which the Government bears the burden of proving by clear and convincing evidence that Petitioner Loza is a flight risk or danger to the community, within seven (7) days of the Court's order.

    a.  Further, the Court should only order Petitioner Loza's immediate release if he is not afforded a bond hearing within seven (7) days.

4.  The request to prohibit Respondents from transferring Petitioners out of the District of New Mexico (including outside the United States, by virtue of staying removal) should be **GRANTED** pursuant to the All Writs Act, 28 U.S.C. § 1651.

To ensure Respondents' compliance with the aforementioned recommendations, the Court should further require filing certification of compliance within ten (10) days of the Court entering its order.  Lastly, in light of the above recommendations, the undersigned recommends that Petitioners' original *Motion for Temporary Restraining Order* (Doc. 3) be **DENIED AS MOOT**.

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**