IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO ADRIAN CASTILLO and
JUAN JOSE LEON LOZA, on behalf of
themselves as individuals and on behalf
of other similarly situated,

        Plaintiffs/Petitioners,

    v.                                      Civ. No. 25-1074 JB/JFR

MARY DE ANDRA-YBARRA, Director of El
Paso Field Office, DORA A. CASTRO, Warden
of Otero Processing Center, KRISTI NOEM,
Secretary of U.S. Department of Homeland
Security, PAMELA JO BONDI, U.S. Attorney
General, SIRCE OWEN, Acting Director of
EOIR, OTERO IMMIGRATION COURT, and
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW,

        Defendants/Respondents.

MAGISTRATE JUDGE'S SECOND PROPOSED
<u>FINDINGS AND RECOMMENDED DISPOSITION</u>[1]

      **THIS MATTER** is before the Court on Petitioners' 'Class Action Complaint and

Petition for Writ of Habeas Corpus' ("Petition"), filed October 29, 2025, Doc. 1, and

Respondents' *Motion to Dismiss Class Action Complaint and Petition for Writ of Habeas Corpus*

("*Motion to Dismiss*"), filed December 23, 2025, Doc. 21.  Petitioners responded to the *Motion*

*to Dismiss* (Doc. 21) on January 2, 2026, Doc. 22, and separately filed 'Supplemental Evidence'

on January 14, 2026, Doc. 23.  Respondents did not reply to either (Docs. 22-23), but filed a

'Notice of Supplemental Authority,' on January 21, 2026.  Doc. 24.  Petitioners did not respond.

---

[1] By an 'Order of Reference Relating to Prisoner Cases' filed October 31, 2025, the presiding judge, United States District Judge James O. Browning, referred this matter to the undersigned to conduct hearings as warranted and to perform any legal analysis required to recommend an ultimate disposition of the case.  Doc. 2; *accord* 28 U.S.C. §§ 636(b)(1)(B), (b)(3); *Va. Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).

The Court, having reviewed the record and the relevant law, recommends that both the Petition (Doc. 1) and *Motion to Dismiss* (Doc. 21) be **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

## TABLE OF CONTENTS

I.  RELEVANT PROCEDURAL BACKGROUND ...................................................................... 3

II. FACTUAL BACKGROUND ................................................................................................. 7
   A. Petitioner Loza ............................................................................................................... 8
   B. Petitioner Castillo ........................................................................................................... 9

III.  LEGAL STANDARDS ..................................................................................................... 13
   A. Motion to Dismiss .......................................................................................................... 13
      1. Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction                13
      2. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Relief
         Can Be Granted…………………………………………………………………15
   B. Writ Authority ................................................................................................................ 17
      1. Writ of Habeas Corpus…………………………………………………………17
      2. Writ of Mandamus…………………………………………………………… 18

IV.  ANALYSIS ......................................................................................................................... 19
   A. Writ of Habeas Corpus: Bond Hearing Claims ........................................................... 22
      1. Legal Background…………………………………………………………………22
      2. Jurisdiction…………………………………………………………………………25
         i. 8 U.S.C. 1226(e)................................................................................................ 27
         ii. 8 U.S.C. § 1252(b)(9) ...................................................................................... 27
         iii. 8 U.S.C. § 1252(g)............................................................................................ 28
      3. Count I: Immigration and Nationality Act……………………………………29
         i. Petitioners are "Applicants for Admission" as Defined by 8 U.S.C. §
            1225(a)(1). .................................................................................................... 30
         ii. Congress Intended to Distinguish "Seeking Admission" from
            "Applicants for Admission" in 8 U.S.C. § 1225(b)(2)(A). .................. 31
         iii. Noncitizens Meeting the Requirements of 8 U.S.C. § 1226(a) are
            Entitled to a Bond Hearing. ................................................................... 37
            a. Relief for Petitioner Castillo.................................................................... 41
            b. Relief for Petitioner Loza ........................................................................ 42
      4. Count II: Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*.................... 44
   B. Writ of Mandamus: Bond Appeal Claims .................................................................... 46
      1. Legal Background…………………………………………………………………47
      2. Count III: Fifth Amendment Due Process Clause…………………………… 48
      3. Count IV: Administrative Procedures Act, 5 U.S.C. § 551 *et seq*…………….. 49
      4. Relief is Moot……………………………………………………………………… 50

V. RECOMMENDATIONS ........................................................................................................ 51

## I.  RELEVANT PROCEDURAL BACKGROUND

Petitioners Antonio Adrian[2] Castillo ("Castillo") and Juan Jose Leon Loza ("Loza") filed the present Petition on October 29, 2025.  *See generally* Doc. 1.  Both Petitioners are noncitizens[3] detained at the Otero County Processing Center in Chaparral, New Mexico.  *See id.* at 1 ¶ 1.  In total, Petitioners assert four counts/causes of action and seek to represent two classes of noncitizens.  Petitioners challenge two distinct detention practices effectuated by Respondents (i.e., denying bond hearings and automatically staying any favorable bond determinations), each being the basis for two claims and one proposed class.  *See generally id.*

Counts I and II allege that Respondents are misapplying the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A) to entirely deny bond hearings to detainees apprehended in the interior, who would otherwise be entitled to a bond hearing under 8 U.S.C. § 1226(a).  *See generally* Doc. 1 at 9-12 ¶¶ 28-35 (Legal Background).  Accordingly, Counts I and II respectively assert violations of the Immigration and Nationality Act ("INA"), *id.* at 19-20 ¶¶ 65-68 (Count I), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, Doc. 1 at

---

[2] Petitioners' counsel has referred to Petitioner Castillo as both "Antonio *Adrian* Castillo" and "Antonio *Angel* Castillo."  *Compare* Doc. 3 at 1 (listing "Antonio *Adrian* CASTILLO" in caption (emphasis added, stylistic capitalization in original)), Doc. 5 at 1 (same), and Doc. 22 at 1 (same), *with* Doc. 3 at 16 (listing "Antonio *Angel* CASTILLO" in caption of proposed order (emphasis added, stylistic capitalization in original)), Doc. 5 at 16 (same), Doc. 19 at 1 (same caption, but not on a proposed order).  On October 31, 2025, Petitioner Castillo signed a declaration under the penalty of perjury, Doc. 5 at 10, which listed his name as "Antonio Adrian Castillo," *id.* at 9; *see also id.* at 6-7 (English translation).  The Court thus presumes that Petitioner Castillo's legal name is "Antonio Adrian Castillo," and uses that name in lieu of "Antonio Angel Castillo."

If Petitioners do not object or state otherwise, the undersigned recommends directing the Clerk of the Court to correct the case caption and docket to accurately reflect Petitioner Castillo's full legal name (i.e., Antonio Adrian Castillo).

[3] In line with Supreme Court practice, *see, e.g.*, *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J., concurring), and recent preferred nomenclature, *see Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9ᵗʰ Cir. 2023) (collecting cases), the Court uses the term "noncitizen(s)" in lieu of the term "alien" to refer to "any person who is not a citizen or national of the United States," *Pereira v. Sessions*, 585 U.S. 198, 201 n.1 (2018), except in quoted language.

20 ¶¶ 69-72 (Count II).  Based on these allegations, both named Petitioners seek to represent a proposed "Bond Denial Class," consisting of:

> All noncitizens apprehended in the interior of the United States and detained at the Otero Conty [sic] Processing Detention Center, Chaparral New Mexico, or any other ICE-contracted or local facility within the District of New Mexico, who (1) have entered or will enter the United States without inspection; (2) are not apprehended upon arrival at a port of entry or its functional equivalent, and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the noncitizen is scheduled for or requests a bond hearing in the Otero Immigration Court.

Doc. 1 at 17 ¶ 56; *see also id.* at 4-5 ¶ 11 (description of "Bond Denial Class," put differently).

Counts III and IV allege that Respondents, through the Office of the Principal Legal Advisor ("OPLA"), have effectively rendered the 8 U.S.C. § 1226(a) bond hearing process illusory by systematically filing Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination') to invoke the automatic stay provisions of 8 C.F.R. § 1003.19(i)(2) whenever a noncitizen receives a favorable bond decision.  *See generally* Doc. 1 at 12-14 ¶¶ 36-39 (Legal Background).  Accordingly, Counts III and IV respectively assert violations of the Fifth Amendment's Due Process Clause, U.S. CONST. amend. V, Doc. 1 at 20-21 ¶¶ 73-76 (Count III), and the APA, 5 U.S.C. §§ 551 *et seq.*, Doc. 1 at 21-22 ¶¶ 77-81 (Count IV).  Based on these allegations, both named Petitioners seek to represent a "Bond Appeal Class," consisting of:

> All detained noncitizens [initially apprehended and processed within the District of New Mexico] who has [sic] a pending bond appeal, or will file an appeal, [(regardless of the facility in which they are detained at the time of the appeal)] of an Immigration Judge's bond hearing ruling to the Board of Immigration Appeals, including, without limitation, where the appeal was initiated by OPLA's filing of a Form EOIR-43, which under 8 C.F.R. § 1003.19(i)(2) stays the grant of bond during the pendency of the appeal.

Doc. 1 at 18 ¶ 61; *see also id.* at 5 ¶ 12 (providing details added above in brackets).

Petitioners assert these four counts against: (1) Mary De Andra-Ybarra, the Field Office Director of the El Paso Field Office of the United States ("U.S.") Immigration and Customs

Enforcement's ("ICE") Enforcement and Removal Operations Division, Doc. 1 at 7 ¶ 20; (2) Dora A. Castro, the Warden of the Otero Processing Center in Chaparral, New Mexico, *id.* at 8 ¶ 21; (3) the U.S. Department of Homeland Security ("DHS"), *id.* at ¶ 23; (4) Kristi Noem, the Secretary of DHS, *id.* at ¶ 22; (5) Pamela Jo Bondi, the U.S. Attorney General, *id.* at ¶ 24; (6) the Executive Office for Immigration Review ("EOIR"), *id.* at 8-9 ¶ 25; (7) Sirce Owen, the Acting Director of EOIR, *id.* at 9 ¶ 26; and (8) the Otero Immigration Court, *id.* at ¶ 27. All individually named Respondents (i.e., Respondents Andra-Ybarra, Castro, Noem, Bondi, and Owen) are sued in their official capacities. *See id.* at 7-9 ¶¶ 20-22, 24, 26.

On November 3, 2025, Petitioners filed a *Motion for Temporary Restraining Order*, Doc. 3, contemporaneously with a 'Brief in Support,' Doc. 4. On November 6, 2025, Petitioners filed an *Amended Motion for Temporary Restraining Order*. Doc. 5. The Court held a motion hearing on Petitioners' *Amended Motion for Temporary Restraining Order* (Doc. 5) on November 19, 2025. *See* Docs. 6-7. Although Respondents had yet to enter appearances at that time, Mr. Ryan Posey, an Assistant U.S. Attorney for the District of New Mexico, attended on behalf of Respondents (with exception of Respondent Castro,[4] who is not employed by the federal government, but rather an independent contractor, *see* Doc. 10 at 1 n.1). *See* Doc. 7.

The undersigned then issued a 'Proposed Findings and Recommended Disposition' ("TRO PFRD") on November 21, 2025, recommending that Petitioners' *Amended Motion for Temporary Restraining Order* (Doc. 5) be granted in part and that Petitioners' original *Motion for Temporary Restraining Order* (Doc. 3) be denied as moot. Doc. 8. Mr. Posey then entered his appearance on behalf of the Respondents and filed objections to the TRO PFRD (Doc. 8) on

---

[4] Nevertheless, as Mr. Posey points out "all arguments made on behalf of the remaining respondents apply equally to [Respondent Castro]." Doc. 10 at 1 n.1. The Court agrees and generally refers to Respondents collectively herein.

December 5, 2025. Doc. 11. Petitioners did not respond to Respondents' objections (Doc. 11).

On February 10, 2026, the Honorable Judge James O. Browning adopted the TRO PFRD in part

and overruled it in part. Doc. 25.

On December 2, 2025, the undersigned issued an 'Order to Show Cause,' requiring, in

relevant part, Respondents to show cause "within fourteen (14) days of service of this Order and

the Petition why the Petition should not be granted." Doc. 9 at 1. On December 18, 2025,

Respondents filed an *Unopposed Motion for Extension of Time to Respond to Class Action

Complaint and Petition for Writ of Habeas Corpus*, requesting an extension to December 23,

2025, Doc. 17, which the Court granted the following day, Doc. 18.

In lieu of an answer, Respondents filed the present *Motion to Dismiss* on December 23,

2025. Doc. 21; *accord* FED. R. CIV. P. 12(a)(4), (b). Petitioners responded on January 2, 2026.

Doc. 22. Petitioners additionally filed 'Supplemental Evidence' on January 14, 2026.[5] Doc. 23.

Respondents neither replied to the *Motion to Dismiss* (Doc. 21), nor responded to Petitioners'

'Supplemental Evidence' (Doc. 23). *See* D.N.M.LR-Civ. 7.8(c) ("Any response must be filed

within seven (7) days of the filing of the Notice . . . . No reply to the response will be

permitted."). However, Respondents filed a 'Notice of Supplemental Authority' on January 21,

2026. Doc. 24. Petitioners did not respond. *See* D.N.M.LR-Civ. 7.8(c).

---

[5] However, Petitioners failed to comply with Local Rule 7.8(c), which requires the filing party to "state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally." D.N.M.LR-Civ. 7.8(c). Nevertheless, given the attachments, the Court construes the 'Supplemental Evidence' as putting the Court on notice of two recent developments regarding Petitioner Castillo's detention and proceedings in Immigration Court. *See generally* Doc. 23. First, on January 5, 2026, Petitioner Castillo filed a 'Bond Memorandum.' Doc. 23 at 8-73 ("Tab B"). Second, on January 12, 2026, Immigration Judge Jacinto Palomino denied Petitioner Castillo's request for a change in custody status "because Matter of Hurtado[.]" *Id.* at 5-7 ("Tab A" ('Order of the Immigration Judge')). The Court considers such filings as necessary to resolve Respondents' factual attacks on jurisdiction. *See infra* Section III.A.1; *accord Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("A court has *wide discretion* to allow affidavits, other documents, and a limited evidentiary hearing *to resolve disputed jurisdictional facts* under Rule 12(b)(1)." (emphasis added)).

## II. <u>FACTUAL BACKGROUND</u>

Petitioners are noncitizens who entered the U.S. unlawfully and without inspection,[6] and are currently detained at the Otero County Processing Center in Chaparral, New Mexico, pending removal proceedings before the U.S. Immigration Court.  Doc. 1 at 1 ¶ 1; *see also* Doc. 21 at 1.  Petitioners' claims arise from DHS' 'Interim Guidance Regarding Detention Authority for Applicants for Admission' ("Interim Guidance") issued on July 8, 2025.  *See* Doc. 1 at 1-2 ¶ 2, 2-3 ¶ 5, 11 ¶ 33, 19 ¶ 67.  This guidance declared that *all* noncitizens who entered the U.S. without inspection and would otherwise be subject to discretionary detention under 8 U.S.C. § 1226(a), are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Doc. 1 at 1-2 ¶ 2, 11 ¶ 33.

On September 5, 2025, the Board of Immigration Appeals ("BIA") decided *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) [hereinafter *Hurtado*].  Doc. 1 at 2 ¶ 3.  Therein, the BIA held that noncitizens who entered the U.S. without inspection, irrespective of their length of time spent in the U.S. or the distance from the border at the time of apprehension, are "applicants for admission" who are "seeking admission," and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Doc. 1 at 2 ¶ 3.  Likewise, the BIA further held that

---

[6] Although the Petition does not expressly state that either Petitioner entered the U.S. without inspection, it was clearly implied when Petitioners pled:

> [T]he statute describes custody and detention in the context of inspection, a process that occurs at or near the border.  That context is significant because it demonstrates that the actions governed by § 1225 concern border enforcement.  Accordingly, the mandatory detention provisions of § 1225(b)(2) do not apply to individuals, *such as Plaintiffs'* and similarly situated class members, *who had already entered and were residing in the interior of the United States when apprehended*.

Doc. 1 at 12 ¶ 35 (emphasis added).  Additionally, the fact that Petitioners entered the U.S. without inspection is inherent to the claims presented.  Petitioners challenge Respondents' application of 8 U.S.C. § 1225(b)(2) to noncitizens who entered without inspection and who would otherwise be eligible for bond under 8 U.S.C. § 1226(a). *See* Doc. 1 at 12 ¶ 35.  Had Petitioners entered with inspection, neither the challenged detention authority nor the asserted deprivation of bond eligibility would be implicated.

Immigration Judges ("IJs") lack jurisdiction to consider bond requests or grant bond to noncitizens present in the U.S. without admission. *Id.*; *see also id.* at 12 ¶ 34.

## A. **Petitioner Loza**

Petitioner Loza is forty-nine years old and a citizen and national of Mexico. Doc. 1 at 16 ¶ 52. He first arrived in the U.S. around August 1999, without inspection. *See id*; *see also id.* at 7 ¶ 19. Petitioner Loza resides in New Mexico, where he owns two restaurants—one in Artesia, New Mexico, which has been in business for "almost ten years," and the other in Ruidoso, New Mexico, which has been in business for "about four years." *Id.* at 7 ¶ 19. Additionally, Petitioner Loza has children who are U.S. citizens. *Id.*

On August 16, 2025, Petitioner Loza "was detained at a check point located in the interior of the United States," *id.* at 16 ¶ 52, near Alamogordo, New Mexico, Doc. 21 at 3, and has since been held at the Otero County Processing Center, Doc. 1 at 16 ¶ 52. Despite being detained in the interior of the U.S., and the above-mentioned facts about Petitioner Loza's pre-detention residence and involvement in the U.S., he was deemed an "applicant for admission" detained under 8 U.S.C. § 1225(b)(2)(A) and thus ineligible for a bond hearing under 8 U.S.C. § 1226(a).[7] *See* Doc. 1 at 17 ¶ 54; *see also* Doc. 21 at 3 (explaining that "[f]ollowing an interview and record check, Respondents determined Petitioner Loza did not have lawful status in the [U.S.]," charged him "with removability pursuant INA § 212(a)(6)(A)(i)," and "detained [him] pursuant to INA § 235(b) pending his removal proceedings." (citing 8 U.S.C. § 1225(b)(2)(A))).[8]

---

[7] In further support that Petitioner Loza was misclassified as an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), the Petition also notes that Petitioner Loza was previously detained but granted bond by an IJ around February 2020. Doc. 1 at 17 ¶ 54. Meaning, Petitioner Loza was previously detained under 28 U.S.C. § 1226(a). *See* Doc. 1 at 17 ¶ 54.

[8] It is not atypical for courts and parties to cite various sections of the INA. But not all INA section numbers are comparable to their codified counterparts in Title 8 of the U.S. Code. The U.S. Citizenship and Immigration Services' website provides a helpful chart listing INA sections and their corresponding U.S. Code section. *See generally*

On October 14, 2025, Petitioner Loza filed a request for custody redetermination. Doc. 21 at 3. On October 20, 2025, an IJ held a bond hearing and denied bond on jurisdictional grounds. *Id.*

Pursuant to Respondents' information and belief, Petitioner Loza is scheduled for a "merits hearing" before the U.S. Immigration Court on January 27, 2026. *Id.*

## B. Petitioner Castillo[9]

Petitioner Castillo is thirty-three years old and a citizen and national of Mexico. Doc. 1 at 14 ¶ 40. He first arrived in the U.S. as a minor in 2001, without inspection, and was raised in El Paso, Texas, until he was eighteen years old. *Id.* At an unspecified date, Petitioner Castillo's abusive stepfather "escorted Mr. Castillo to the international bridge between the United States and Mexico and kicked Mr. Castillo out of the country." *Id.*

Petitioner Castillo reentered the U.S. on July 1, 2023, without inspection. *Id.* at ¶ 41. However, Petitioner Castillo was arrested on December 29, 2024, for pending burglary charges, "from 15 years ago. . . . when Mr. Castillo was still residing in the United States during his

---

*Immigration and Nationality Act*, U.S. CITIZENSHIP & IMMIGR. SERVS., https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act (last visited Feb. 5, 2026).

[9] The Court's review is more limited in analyzing a motion to dismiss than in reviewing a motion for summary judgment. *See generally infra* Section III.A. However, the parties have included many attachments from Immigration Court proceedings, which the Court considers in its factual background. *See infra* Section III.A.1; *accord Holt*, 46 F.3d at 1003 ("A court has *wide discretion* to allow affidavits, other documents, and a limited evidentiary hearing *to resolve disputed jurisdictional facts* under Rule 12(b)(1)." (emphasis added)).

However, the attachments in this case only pertain to Petitioner Castillo. None of the relevant filings from Petitioner Loza's immigration proceedings have been submitted to the Court. Thus, in setting forth the relevant facts for Petitioner Castillo, the Court not only considers the Petition (Doc. 1) and the present briefing (Docs. 21-22), but also: (1) the 'Order of the Immigration Judge,' granting bond, issued August 28, 2025 (Doc. 4 at 44-45); (2) the Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination') filed August 29, 2025 (Doc. 4 at 17); (3) the Form EOIR-26 ('Notice of Appeal from a Decision of an Immigration Judge'), filed September 10, 2025 (Doc. 4 at 18-20); (4) DHS' supplemental 'Memorandum of Law' attached to Form EOIR-26, filed September 10, 2026 (Doc. 4 at 21-42); (5) Petitioner Castillo's 'Appeal Brief,' filed October 16, 2025 (Doc. 12 at 9-19); (6) the BIA's decision sustaining DHS' appeal, issued December 5, 2025 (Doc. 12 at 6-7; Doc. 21-1 at 3-4); (7) Petitioner Castillo's 'Bond Memorandum,' submitted on January 5, 2026, for the IJ's consideration of Petitioner Castillo's custody redetermination request (Doc. 23 at 9-73); and (8) the 'Order of the Immigration Judge' denying custody redetermination, issued January 12, 2026 (Doc. 23 at 6-7).

formative years." *Id.* After being arrested, Petitioner was detained at the El Paso County Detention Facility, where he was then encountered by ICE. Doc. 21 at 3. On either January 2 or 6, 2025, *compare* Doc. 4 at 23 (DHS' supplemental 'Memorandum of Law' attached to Form EOIR-26 ('Notice of Appeal from a Decision of an Immigration Judge'), listing January 2, 2025), *with* Doc. 23 at 10 ¶ 1 (Petitioner Castillo's 'Bond Memorandum,' listing January 6, 2025), "[f]ollowing an interview and record check," DHS issued Petitioner Castillo Form I-862 ('Notice to Appear'), charging him "with removability pursuant INA § 212(a)(6)(A)(i)," Doc. 21 at 3. Additionally, at unspecified date, ICE issued Form I-200 ('Warrant of Arrest'). *See* Doc. 1 at 6 ¶ 18. Pursuant to that warrant, Doc. 12 at 14 (Petitioner Castillo's 'Appeal Brief'), DHS/ICE took custody of Petitioner Castillo, "without setting a bond," Doc. 1 at 6 ¶ 18, and "then transferred [him] to a processing center at 8915 Montana Ave, El Paso, Texas, for immigration proceedings," Doc. 12 at 14.

Petitioner Castillo's burglary charges were dismissed in March 2025. Doc. 1 at 14 ¶ 41. On April 19, 2025, Petitioner Castillo filed a motion for custody redetermination. Doc. 21 at 4. An IJ held a custody redetermination review on April 28, 2025. Doc. 1 at 6 ¶ 18, 14 ¶ 42. The IJ denied Petitioner Castillo bond based on the (ultimately incorrect) claim that Petitioner had been arrested for domestic violence charges. *Id.* at 6 ¶ 18, 14-15 ¶¶ 42-43.

Petitioner Castillo appealed this determination to the BIA on April 29, 2025. *Id.* at 6 ¶ 18, 15 ¶¶ 44. In both the aforementioned hearing and appellate briefing, DHS alleged that Petitioner Castillo had past criminal activity warranting the denial of bond, but at no point did DHS raise arguments opposing jurisdiction. *Id.* at 14-15 ¶¶ 42-44. On August 20, 2025, the BIA held that the IJ's denial was clearly erroneous (because Petitioner Castillo had never been arrested for domestic violence) and remanded the bond matter to the IJ to continue exercising

jurisdiction and issue a new order. *Id.* at 6 ¶ 18, 15 ¶ 46. In doing so, the BIA made no mention of jurisdictional issues. *Id.* at 15 ¶ 46.

Pursuant to the BIA's order, Petitioner Castillo had another bond hearing on August 28, 2025. *Id.* at 6-7 ¶ 18, 15 ¶ 47; *see also* Doc. 4 at 44-45 ('Order of the Immigration Judge'). During this hearing, DHS argued for the first time "that the court did not have jurisdiction because he was deemed an 'applicant for admission' and was not eligible for bond." Doc. 1 at 15 ¶ 47. Nevertheless, "[t]he [IJ] found jurisdiction under [8 U.S.C.] § 1226(a) . . . ." *Id.*; *see also id.* at 6 ¶ 18. The IJ further found that Petitioner Castillo proved, by clear and convincing evidence, that he was neither a danger to society nor a flight risk. *Id.* at 7 ¶ 18, 15 ¶ 47. Accordingly, the IJ ordered that Petitioner Castillo be released, conditioned upon a $20,000 bond and "ATD at DHS discretion."[10] *Id.* at 7 ¶ 18; *see also* Doc. 4 at 44 ('Order of the Immigration Judge').

The following day (August 29, 2025), DHS filed Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination'), Doc. 4 at 17, which invoked the automatic-stay provisions of 8 C.F.R. § 1003.19(i)(2). Doc. 1 at 15 ¶ 48. On September 10, 2025, DHS filed Form EOIR-26 ('Notice of Appeal from a Decision of an Immigration Judge'), Doc. 4 at 18-20. Doc. 1 at 16 ¶ 49. Attached to Form EOIR-26 was DHS' supplemental 'Memorandum of Law,' Doc. 4 at 21-42, which "argued that the IJ lacked jurisdiction to hear bond requests or to grant bond to any noncitizen present in the United States without admission," Doc. 1 at 16 ¶ 49. Petitioner Castillo filed his responding 'Appeal Brief' on October 16, 2025. Doc. 12 at 9-19.

---

[10] Given the context, the Court understands "ATD" to mean "Alternatives to Detention." *See* Doc. 1 at 7 ¶ 18 (citation omitted). But this minute detail is not at issue and does not require further attention.

On December 5, 2025, the BIA sustained DHS' appeal.  Doc. 21-1 at 3-4 (BIA Order).  Having found that the IJ lacked jurisdiction pursuant to *Hurtado*, 29 I&N Dec. at 229, the BIA vacated the IJ's bond order.  Doc. 21-1 at 3-4 (BIA Order).  Petitioners note that, in its order, the BIA did not address Petitioner Castillo's arguments against the reinterpretation set forth in *Hurtado*.  Doc. 12 at 1; *compare* Doc. 21-1 at 3-4 (BIA Order), *with* Doc. 12 at 9-19 ('Appeal Brief').  Nevertheless, as a result of the BIA's ruling, Petitioner Castillo is no longer detained under the automatic stay provision of 8 C.F.R. § 1003.19(i)(2); Petitioner Castillo is presently detained pursuant to INA § 235(b) (i.e., 8 U.S.C. § 1225(b)), again.  Doc. 21 at 4.

On January 5, 2026,[11] Petitioner Castillo submitted a 'Bond Memorandum,' requesting a custody redetermination.  Doc. 23 at 9-73 ('Bond Memorandum').  Therein, Petitioner Castillo relied on the nationwide certification of a "Bond Eligible Class" in *Bautista v. Santacruz*, No. 25-cv-01873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), as basis for his continued argument against the purported lack of jurisdiction set forth in *Hurtado*.  *See* Doc. 23 at 11-12.  But an IJ nevertheless denied Petitioner Castillo's custody redetermination request on January 12, 2026, "because Matter of Hurtado," with no further explanation.  Doc. 23 at 6-7 ('Order of the Immigration Judge').

Pursuant to Respondents' information and belief, Petitioner Castillo is scheduled for a "master calendar hearing" before the U.S. Immigration Court on January 15, 2026.  Doc. 21 at 4.

---

[11] The 'Certificate of Service' included at the bottom of the 'Bond Memorandum' is dated as "this 5th day of January 2025," Doc. 23 at 12, which the Court construes to be a typographical error due to the timestamp at the top of each page listing "01/05/2026," *id.* at 9-73, as well as chronology and multiple references to developments and cases occurring *after* January 5, 2025, *see, e.g.*, *id.* at 10 (listing Immigration Court developments in January, August, and September 2025).  Therefore, the Court construes the 'Bond Memorandum' to have been filed on January 5, *2026*.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

Rule 12(b) of the Federal Rules of Civil Procedure enumerates seven defenses that a party may assert by motion. *See generally* FED. R. CIV. P. 12(b)(1)-(7). The present *Motion to Dismiss* does not explicitly cite the subsections upon which it is based. *See generally* Doc. 21. Nevertheless, the Court construes the *Motion to Dismiss* to assert Rule 12(b)(1) to Counts II, III, and IV. *See* Doc. 21 at 24 (stating Petitioners lack standing to bring Count II); *id.* at 18-19 (stating "the Court does not have subject matter jurisdiction to review" Counts III and IV). The Court further construes the *Motion to Dismiss* to assert Rule 12(b)(6) to Count I, *see* Doc. 21 at 14 ("Count I does not find support under current law and should be dismissed."), and as an alternative basis for dismissal for Counts III and IV, *see id.* at 19 (stating, immediately after arguing that Counts III and IV are moot, that: "*[f]urther*, Petitioners *fail to state a claim* upon which *any additional relief* can be granted." (emphasis added)).

"When a defendant seeks to dismiss a claim under both Rules 12(b)(1) and 12(b)(6)," as is the case here, "the Court must decide the Rule 12(b)(1) motion first." *Rancho Lobo, Ltd. v. Devargas*, No. 00-925, 2004 WL 7337798, at *1 (D.N.M. Aug. 18, 2004) (citing *Mounkes v. Conklin*, 922 F.Supp. 1501, 1506 (D. Kan. 1996)). "If the Court lacks subject matter jurisdiction, a Rule 12(b)(6) challenge becomes moot." *Id.* (citing *Mounkes*, 922 F.Supp. at 1506).

#### 1. Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Federal courts only have jurisdiction where Congress has provided, the limits of which are "not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). In other words, federal courts are tribunals of limited jurisdiction and require a

statutory basis to exercise jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002);

*Castaneda v. Immigr. & Naturalization Serv.*, 23 F.3d 1576, 1580 (10th Cir. 1994) ("Federal

courts operate only in the presence rather than the absence of statutory authority." (quotation

marks and citations omitted)).

      "The party invoking federal jurisdiction has the burden to establish that it is proper, and

'there is a presumption against its existence.'" *Salzer v. SSM Health Care of Okla. Inc.*, 762

F.3d 1130, 1134 (10th Cir. 2014) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909

(10th Cir. 1974)). Accordingly, Federal Rule of Civil Procedure 12(b)(1) authorizes courts to

dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1); *see also*

*Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019) ("A Rule 12(b)(1) motion to

dismiss only requires the court to determine whether it has authority to adjudicate the matter.").

Inversely, "[t]o survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court

has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093,

1108 (10th Cir. 2023).

      "Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen Enters., II,*

*Inc.*, 65 F.4th 500, 507 (10th Cir. 2023); *see also Holt v. United States*, 46 F.3d 1000, 1002 (10th

Cir. 1995) (distinguishing "facial" attacks and "factual" attacks). The party moving under Rule

12(b)(1) may either: (1) attack the complaint's *facial* allegations concerning the existence of

subject matter jurisdiction; or (2) go beyond allegations contained in the complaint and challenge

the *facts* upon which subject matter jurisdiction is based. *Merrill Lynch Bus. Fin. Servs., Inc. v.*

*Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004).

      In reviewing the former—a facial attack—the district court limits its review to the

sufficiency of the complaint, and it accepts the allegations in the complaint as true. *Graff*, 65

F.4th at 507 (citing *Holt*, 46 F.3d at 1002). On the other hand, in reviewing the latter—a factual attack—"a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)); *see also Sanchez v. Ward*, No. 13-00246, 2013 WL 12328914, at *2 (D.N.M. Oct. 29, 2013) (assuming defendant intends facial attack where they included no affidavits or documentation for the court to consider). In a factual attack, courts have wide discretion to review "affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Holt*, 46 F.3d at 1002; *see also Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005) (recognizing discretion to allow documentary and testimonial evidence under Rule 12(b)(1)). Thus, in resolving a factual jurisdictional question, "[r]eference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment . . . ." *SK Fin. SA*, 126 F.3d at 1275.

### 2. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) enables a party to assert, by motion, the defense of "failure to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6). In deciding a motion to dismiss premised on Rule 12(b)(6), the Court accepts the factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss premised upon Rule 12(b)(6), a plaintiff's complaint must contain sufficient facts that, when assumed to be true, state a claim to relief that is plausible on its face. *Id.* at 570; *see also* FED. R. CIV. P. (8)(a), (d) (listing requisites for pleadings to state claim for relief).

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While the facts in the complaint need not be detailed or establish a prima facie case, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). But "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim," *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012), because "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims," *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Similarly, "[c]onclusory allegations are not entitled to the assumption of truth." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021); *accord Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." (alteration in original) (quotation marks and citation omitted)).

In deciding a motion to dismiss challenging the legal sufficiency of a complaint, the Court generally must exclude extraneous material or convert the motion to one for summary judgment. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). "A district court may, however, consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

**B.  Writ Authority**

The All Writs Act, as the name implies, provides federal courts with general authority to "issue *all* writs necessary or appropriate in aid of their respective jurisdictions . . . ."  28 U.S.C. § 1651(a) (emphasis added).  Available writs include, *inter alia*, mandamus, habeas corpus, certiorari, quo warranto, and prohibition—antiquatedly termed "prerogative writs."  *See generally Withrow v. Williams*, 507 U.S. 680, 716 (1993) (Scalia & Thomas, JJ., concurring in part) ("In English law, habeas corpus was one of the so-called 'prerogative' writs, which included the writs of mandamus, certiorari, and prohibition." (citations omitted)).

Additionally, and of relevance here,[12] the All Writs Act allows "a court which has jurisdiction" to issue "[a]n alternative writ or rule nisi . . . ."  28 U.S.C. § 1651(b).  As discussed next, in addition to the All Writs Act, the forms of writ relevant here each have independent, writ-specific statutory authority.  *See* 28 U.S.C. §§ 1361 (authorizing "action in the nature of mandamus"), 2241(a) (authorizing writs of habeas corpus).

**1.  Writ of Habeas Corpus**

28 U.S.C. § 2241(a) provides federal courts the jurisdiction to grant a writ of habeas corpus to "release from unlawful physical confinement," *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973), a petitioner demonstrating "by a preponderance of the evidence," *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam), the existence of one of the five circumstances enumerated in 28 U.S.C. § 2241(c).  Relevant here, a petition for a writ of habeas corpus raised pursuant to 28 U.S.C. § 2241(c)(3) seeks release from federal custody that is "in violation of the Constitution or laws or treaties of the United States . . . ."

---

[12] As Respondents correctly point out, "Counts III and IV should be construed as a mandamus, rather than a habeas claim."  Doc. 21 at 3 n.1.

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).  This includes immigration-related detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004) ("[Noncitizen] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . .  Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004).

### 2.  <u>Writ of Mandamus</u>

Although the writ of mandamus has been abolished, *see* FED. R. CIV. P. 81(b), the Mandamus Act grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361.  *See also* 33 CHARLES A. WRIGHT, CHARLES H. KOCH, & RICHARD MURPHY, FEDERAL PRACTICE AND PROCEDURE § 8305 (2nd ed. 2018) (noting that 28 U.S.C. § 1361 "uses the indirect phrasing, 'in the nature of mandamus,'" in light of Rule 81(b)).  The Tenth Circuit "thus refer[s] to relief sought under § 1361 simply as 'mandamus.'"  *Hernandez-Avalos v. Immigr. & Naturalization Serv.*, 50 F.3d 842, 845 n.5 (10th Cir. 1995).

Consistent with the limitations that traditionally governed the common-law writ of mandamus, an action under 28 U.S.C. § 1361 is "intended to provide a remedy for a plaintiff *only if* he has exhausted all other avenues of relief *and only if* the defendant owes him a clear nondiscretionary duty."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (emphasis added); *see also Est. of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir. 1984) ("[T]he general rule [is] that mandamus is appropriate where the person seeking the relief 'can show a duty owed to him by

the government official to whom the writ is directed that is ministerial, clearly defined and peremptory.'" (quoting *Carpet, Linoleum & Resilient Tile Layers, Loc. Union No. 419 v. Brown*, 656 F.2d 564, 556 (10th Cir. 1981))).

Once it has been shown that an agency has failed to perform a ministerial duty, courts have some discretion in fashioning mandamus relief.  *See Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500 (10th Cir. 1991) ("Although the party seeking issuance of a writ of mandamus has a heavy burden of showing that the conditions are clearly met, the issuance of the writ is a matter of the issuing court's discretion." (citations omitted)).  But "while the district court can compel the defendants to exercise their discretion, it cannot dictate how that discretion is to be exercised."  *Id.* at 501 (affirming district court's order to complete administrative review of application within certain time but reversing the order to approve said application).  However, "even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised.  In these situations, mandamus will lie when the standards have been ignored or violated."  *Carpet, Linoleum & Resilient Tile Layers*, 656 F.2d at 566 (quotation marks and citation omitted); *see, e.g.*, *Est. of Smith*, 747 F.2d at 591 (holding that mandamus is appropriate where Secretary has "a duty to promulgate regulations," even though the relevant "statute vests broad discretion in the Secretary as to how that duty is best accomplished," and the court "cannot control the specifics of how the Secretary satisfies the duty.").

## IV. <u>ANALYSIS</u>

This case challenges two distinct detention practices effectuated by Respondents, each of which underpins two counts.  *See supra* Section I.

First, as addressed in Section IV.A, Counts I and II challenge Respondents' allegedly incorrect classification of noncitizens detained during interior-enforcement as "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), which denies Petitioners bond hearings, which they would have otherwise received historically under 8 U.S.C. § 1226(a).  *See* Doc. 1 at 19-20 ¶¶ 65-68 (Count I); *id.* at 20 ¶¶ 69-72 (Count II).  These claims are properly analyzed under the writ of habeas corpus framework, as they challenge the lawfulness of Petitioners' ongoing detention.  *See* 28 U.S.C. §§ 2241(a), (c)(3).

Second, as addressed in Section IV.B, Counts III and IV challenge Respondents' allegedly systematic filing of Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination') to trigger the automatic stay provisions of 8 C.F.R. § 1003.19(i)(2) whenever a noncitizen receives a favorable bond ruling to contest an IJ's jurisdiction to issue bonds under 8 U.S.C. § 1226(a).  *See* Doc. 1 at 20-21 ¶¶ 73-76 (Count III); *id.* at 21-22 ¶¶ 77-81 (Count IV).  Petitioners allege that this automatic-stay provision renders bond hearings illusory.  *Id.* at 3 ¶ 7, 13 ¶ 38.  These claims are properly analyzed under the writ of mandamus framework because Petitioners seek to compel timely administrative action unlawfully withheld or unreasonably delayed.  *See* 28 U.S.C. § 1361.

Each set of claims underpins one proposed class.  *See* Doc. 1 at 19 & 20 (stating, under both headings for Counts I and II, "On Behalf of Plaintiff and the Bond Denial Class"); *id.* at 20 & 21 (stating, under both headings for Counts III and IV, "On Behalf of Plaintiff and the Bond Appeal Class").  Although Respondents request that the Court dismiss Petitioners' class-action allegations, *see* Doc. 21 at 2-3, 13-14, 19-24, the Court finds it inappropriate to analyze the merits of the proposed classes at this stage—that is, upon a motion to dismiss under FED. R. CIV. P. 12.

Respondents have cited no binding authority that would require the Court to apply *Ashcroft v. Iqbal* or *Bell Atl. Corp. v. Twombly* to Petitioners' class-action allegations. *Compare* Doc. 21, *with supra* Section III.A. Although Respondents cite the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), for the proposition that the Petitioners' class-action allegations cannot survive a motion to dismiss, Doc. 21 at 13, 19, 22, that case is procedurally dissimilar. In *Wal-Mart*, the issue before the Supreme Court was whether the lower courts had properly granted a motion for class certification pursuant to FED. R. CIV. P. 23. *See* 564 U.S. at 345-46; *see also Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." (quotation marks omitted) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974))). The matter presently before the Court, on the other hand, is a motion to dismiss under FED. R. CIV. P. 12(b). *See* Doc. 21; *supra* Section III.A.

A Rule 23 analysis requires the Court to undergo a "rigorous analysis," that will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim."[13] *Wal-Mart*, 564 U.S. at 351. Given the different legal standard applied, "class-action allegations enable [Petitioners] to take advantage of a procedural device, not a new cause of action." *Anderson Living Tr. v. ConocoPhillips Co.*, 952 F. Supp. 2d 979, 1057 (D.N.M. 2013); *see also Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) ("We, of course, adhere to the principle that class certification does not depend on the merits of a suit."). Moreover, "[t]he

---

[13] In the Tenth Circuit, the specific burden of proof that plaintiffs must satisfy in demonstrating class certifiability is not specifically defined. *See generally White v. Gen. Motors LLC*, No. 21-cv-00410, 2023 WL 3278460, at *3 (D. Colo. May 5, 2023) (discussing lack of binding precedent, analyzing persuasive authority setting forth a preponderance of evidence standard, and concluding that the Tenth Circuit will foreseeably require plaintiffs to fulfill their burden by a preponderance of evidence).

class action allegations are rather pro forma at this point; the heavy lifting is done at the class certification hearing, rather than on a motion to dismiss." *Anderson Living Tr.*, 952 F. Supp. 2d at 1058 (first citing *Eisen*, 417 U.S. at 178; and then citing *Anderson*, 690 F.2d at 799).

## A.  Writ of Habeas Corpus: Bond Hearing Claims

Counts I and II raise issues appropriately suited for analysis under the writ of habeas corpus standard, since both counts allege unlawful detention resulting from the denial of a bond hearing, in alleged violation of the INA.  *See* Doc. 1 at 19-20 ¶¶ 65-68 (Count I); *id.* at 20 ¶¶ 69-72 (Count II); *accord* 28 U.S.C. § 2241.

Both counts turn on the claim that "8 U.S.C. § 1225(b)(2) does not apply to noncitizens residing in the United States who are charged as inadmissible because they have previously entered the country without being admitted." Doc. 1 at 19 ¶ 66, 20 ¶ 70 (quoted language repeated under Counts I and II).  Instead, Petitioners claim that "[s]uch noncitizens who are detained as part of interior enforcement, far from any port of entry, are detained under § 1226(a), unless subject to another provision such as § 1225(b)(1), § 1226(c), or § 1231." *Id.* (same). Based on Petitioners' interpretation of the statutes at issue, Count I alleges that "[t]he application of § 1225(b)(2) . . . violate[s] the Immigration and Nationality Act," *id.* at 20 ¶ 68, and Count II alleges that this "application of § 1225(b)(2) . . . is arbitrary, capricious, and not in accordance with law, [which] . . . violates the APA," *id.* at ¶ 72 (citing 5 U.S.C. § 706(2)).

### 1.  Legal Background

The INA, as codified in various sections of Title 8 of the U.S. Code and supplemented by various subsections of Title 8 of the Code of Federal Regulations ("C.F.R."), authorizes three basic forms of detention for noncitizens in removal proceedings.  "The[se] applicable 'statutes apply at different stages of an alien's detention.'" *Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571,

575 (N.D. Cal. 2020) (quoting *Diouf v. Mukasey*, 542 F.3d 1222, 1228 (9th Cir. 2008)).
"Moreover, '[w]here an alien falls within this statutory scheme can affect whether his detention
is mandatory or discretionary, as well as the kind of review process available to him if he wishes
to contest the necessity of his detention.'" *Id.* (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053,
1057 (9th Cir. 2008)) (alteration in original).

First, 8 U.S.C. § 1225 (INA § 235) requires mandatory detention of noncitizens subject to
expedited removal under subsection (b)(1) and other, specified "applicants for admission" under
subsection (b)(2).  Second, 8 U.S.C. § 1226 (INA § 236) allows, under subsection (a), the
discretionary release of noncitizens arrested and detained pursuant to a warrant issued by the
Attorney General, except for noncitizens deemed inadmissible or deportable for specific criminal
activity and/or offenses listed under subsection (c).  Third, and lastly, 8 U.S.C. § 1231 (INA §
241) mandates the detention of noncitizens with a final order of removal under subsection (a)(2),
but subsection (a)(3) requires the supervised release of noncitizens (except noncitizens deemed
inadmissible or deportable for specific criminal activity and/or offenses listed in (a)(2)(A)) who
do not leave or are removed within the removal period as measured under subsection (a)(1).

These detention provisions were enacted as part of the Illegal Immigration Reform and
Immigrant Responsibility Act ("IIRIRA") of 1996.  Pub. L. No. 104-208, 110 Stat. 3009.  By
way of comparison, before Congress enacted IIRIRA, the INA "provided for two types of
removal proceedings: deportation hearing[s] and exclusion hearings."  Doc. 21 at 7 (quoting
*Hose v. Immigr. & Naturalization Serv.*, 180 F.3d 992, 994 (9th Cir. 1999)) (quotation marks
omitted) (alteration reflecting original quotation).  "Noncitizens who arrived at a port of entry
would be placed in 'exclusion proceedings and subject to mandatory detention, with potential

23

release solely by means of a grant of parole[ . . . ].'" *Id.* (first quoting *Hurtado*, 29 I&N Dec. at 223; and then citing 8 U.S.C. §§ 1225(a)-(b), 1226(a)).

When Congress enacted IIRIRA, EOIR clarified in its implementing regulations that, as a general matter, individuals who entered the U.S. without inspection were not considered detained under 8 U.S.C. § 1225.  Doc. 1 at 10 ¶ 30.  Instead, such noncitizens were treated as detained under 8 U.S.C. § 1226(a).  Doc. 1 at 10 ¶ 30 (citing Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) [hereinafter IIRIRA Implementation] ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.")).  Likewise, "the Otero Immigration Court, as did other immigration courts across the country, regularly exercised jurisdiction under [8 U.S.C.] § 1226(a) over noncitizens who were apprehended and processed in the District of New Mexico, granting bond in appropriate cases."  Doc. 1 at 2 ¶ 4.

On July 8, 2025, DHS, "in coordination with EOIR/DOJ," issued Interim Guidance declaring that all noncitizens who entered the U.S. without inspection are to be deemed "applicants for admission" qualifying for mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Doc. 1 at 1-2 ¶ 2.  Nevertheless, "most Otero Immigration Judges . . . continued to find jurisdiction under § [8 U.S.C.] 1225(a) [sic] to decide custody matters and have granted bond in meritorious cases."  Doc. 1 at 2 ¶ 5.

But on September 5, 2025, the BIA adopted DHS' Interim Guidance in *Hurtado*, 29 I&N Dec. at 229.  Doc. 1 at 2 ¶ 3.  The BIA held that all noncitizens who entered without inspection, irrespective of their length of time spent in the U.S. or the distance from the border at the time of

apprehension, are "applicants for admission" who are "seeking admission," and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Doc. 1 at 2 ¶ 3.  As such, the BIA further concluded that IJs lack authority to consider bond requests or grant bond to noncitizens present in the U.S. without admission.  *Id.*  The conclusions set forth in *Hurtado* render any attempt to seek relief directly from the agency futile.  *Mosqueda v. Noem*, No. 25-cv-02304, 2025 WL 2591530, at *7 (C.D. Cal. Sep. 8, 2025) (Until the "BIA no longer applies a policy that likely violates federal law, the circumstances do not present a need for requiring prudential exhaustion."); *see also Romero v. Hyde*, 795 F. Supp. 3d 271, 277-281 (D. Mass. 2025) (reaching same conclusion).

## 2.  Jurisdiction

Before turning to the merits of Counts I and II, the Court must first ascertain whether it has jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("This question [of jurisdiction] the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.").

Federal courts have jurisdiction to grant a writ of habeas corpus to a petitioner who demonstrates that he is in federal custody "in violation of the Constitution or laws . . . of the United States."  28 U.S.C. § 2241(c)(3).  However, when the petitioner is a noncitizen detained by immigration authorities, Congress has placed various limits on the exercise of this jurisdiction.  *See, e.g.*, 8 U.S.C. §§ 1226(e), 1252(b)(9), 1252(g).  Accordingly, the Tenth Circuit has repeatedly stated that district courts lack jurisdiction to review removal orders, to hear challenges to removal orders, or to stay removal orders.  *See Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007) ("Congress has provided an avenue for direct review of final orders of removal through petitions for review in courts of appeals.  Indeed, 'petitions for review

filed with the court of appeals are the sole and exclusive means of review of most administrative orders of removal.'" (quoting *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006)));

*Valdovinos-Blanco v. Holder*, 557 F. App'x 793, 794 (10th Cir. 2014) (unpublished) (court "unaware of any statutory or common-law authority permitting a federal court to intervene in an alien's ongoing deportation proceedings to order withholding of removal *or to otherwise stay an alien's removal while his appeal is still pending before the BIA until a separate lawsuit he filed is resolved*." (emphasis added) (internal quotation marks, citation, and brackets omitted)).

Nevertheless, federal courts retain jurisdiction under 28 U.S.C. § 2241 to review habeas claims by noncitizen detainees who either challenge their detention as unconstitutional or raise questions of law regarding the extent of the government's statutory authority to detain them.

*Ferry*, 457 F.3d at 1131 ("[T]he Real ID Act eliminates a district court's jurisdiction over habeas petitions challenging final orders of removal. However, the Real ID Act did not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention.")

       It appears that Respondents attack Count I under FED. R. CIV. P. 12(b)(6) and do not attack the Court's general jurisdiction over the habeas corpus issues. *See* Doc. 21 at 14 ("Count I does not find support under current law and should be dismissed."). As a matter of completeness, to the extent that Respondents' *Motion to Dismiss* (Doc. 21) could be construed otherwise, the Court briefly addresses the relevant jurisdiction-depriving statutes and concludes that jurisdiction exists. *Accord Rancho Lobo*, 2004 WL 7337798, at *1 ("When a defendant seeks to dismiss a claim under both Rules 12(b)(1) and 12(b)(6)," as is the case here, "the Court must decide the Rule 12(b)(1) motion first." (citing *Mounkes*, 922 F.Supp. at 1506)).

### i.  <u>8 U.S.C. 1226(e)</u>

First, 8 U.S.C. § 1226(e) prohibits judicial review of the "Attorney General's discretionary judgment regarding the application of" Section 1226.  Thus, "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  8 U.S.C. § 1226(e).

Section 1226(e) does not prevent the Court's review here because "this limitation applies only to 'discretionary' decisions about the 'application' of § 1226 to particular cases.  It does not block lawsuits over 'the extent of the Government's detention authority under the "statutory framework" as a whole.'"  *Nielsen v. Preap*, 586 U.S. 392, 401 (2019) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018)); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and . . . that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail.").  Here, Petitioners dispute the extent of the statutory authority that Respondents claim.  *See generally* Doc. 1; *cf. Nielsen*, 586 U.S. at 401.  More specifically, at issue is the general extent of the Government's authority under § 1225(b)(2) and § 1226(a).  *See* Doc. 1 at 10 ¶ 30.  Because this claim of authority does not constitute a mere "discretionary" application of the relevant statutes, judicial review is not barred by § 1226(e).

### ii.  <u>8 U.S.C. § 1252(b)(9)</u>

Second, the Court is neither stripped of jurisdiction by 8 U.S.C. § 1252(b)(9), which states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas

corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

As in *Jennings*, Petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined."  583 U.S. at 294; *cf. Nielsen*, 586 U.S. at 402; *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (explaining that § 1252(b)(9) "is certainly not a bar where, as here, the parties are not challenging any removal proceedings.").  Moreover, to the extent that Petitioners' claims "aris[e] from" the removal proceedings brought against Petitioners, the Court points to *Jennings*' conclusion that "arising from" should not be interpreted so extremely as to preclude claims arising from conditions of confinement, including prolonged detention.  583 U.S. at 293.

### iii.  **8 U.S.C. § 1252(g)**

Lastly, the Court is not stripped of jurisdiction by 8 U.S.C. § 1252(g), since that subsection only prohibits judicial review "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  *See, e.g.*, *Regents*, 591 U.S. at 19 (concluding that § 1252(g) "limits review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders,'" but does not "cover 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" (first quoting 8 U.S.C. § 1252(g); and then quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999))).  Here, while removal proceedings are inherently part of the factual background, the Court's review pertains to Petitioners' *detention* pending removal proceedings.  *Cf. Ozturk v. Hyde*, 136 F.4th 382, 397 (2nd

Cir. 2025) (concluding that § 1252(g) did not bar habeas review of petitioner's "challenges [to]
her unlawful *detention*, pending [removal] proceedings . . . ." (emphasis in original)).

      To conclude, to the extent Petitioners' claims challenge their detention as
unconstitutional and challenge the extent of DHS's statutory authority to deny IJs' jurisdiction to
issue bonds, the Court finds that it has subject-matter jurisdiction.  *Cf. id.*  Therefore, dismissal
under FED. R. CIV. P. 12(b)(1) is not appropriate, and the Court now reviews whether Counts I
and II sufficiently state a claim for which relief can be granted under FED. R. CIV. P. 12(b)(6).

### 3.   <u>Count I: Immigration and Nationality Act</u>

      Petitioners first argue that Respondents (by virtue of following DHS' Interim Guidance
as adopted by the BIA in *Hurtado*, 29 I&N Dec. at 229) are violating the INA by misapplying
the mandatory detention provisions of 8 U.S.C. § 1225(b)(2) to deny bond hearings to
noncitizens who were apprehended and processed in the interior of the U.S., who, historically,
would have otherwise been detained and granted bond hearings under 8 U.S.C. § 1226(a).  Doc.
1 at 19-20 ¶¶ 65-68 (Count I).

      In short, the Court must analyze the proper application of 8 U.S.C. § 1225, and its
neighboring provision, 8 U.S.C. § 1226.  To summarize the analysis below, the undersigned
finds that: (1) Petitioners are "applicants for admission" as defined by 8 U.S.C. § 1225(a)(1); (2)
Congress intended to distinguish an "applicant for admission" from those "seeking admission" in
8 U.S.C. § 1225(b)(2)(A); (3) 8 U.S.C. § 1225(b)(2) does not apply to *all* "applicants for
admission" not otherwise detained pursuant to 8 U.S.C. § 1225(b)(1), because such an
application would render certain subsections of 8 U.S.C. § 1226(c) superfluous; and (4) the
implementing regulations underpinning 8 U.S.C. § 1226 require a bond hearing.

### i. **Petitioners are "Applicants for Admission" as Defined by 8 U.S.C. § 1225(a)(1).**

The Court begins with a plain text review. *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (alteration in original) (citations omitted)). Section 1225(a)(1) defines an "applicant for admission" to include two categories of noncitizens: (1) "[a]n alien present in the United States who has not been admitted;" and (2) "[a]n alien . . . who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) . . . ." 8 U.S.C. § 1225(a)(1).

Based on that provision alone, Petitioners are applicants for admission as defined under 8 U.S.C. § 1225(a)(1) because they were "alien[s] present in the United States who ha[ve] not been admitted . . . ." *Accord Jennings*, 583 U.S. at 287 ("[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.' Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law."); IIRIRA Implementation, 62 Fed. Reg. at 10323 (explaining that "aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection)" are considered applicants for admission but nevertheless "eligible for bond and bond redetermination."); *see also* Doc. 25 at 27 ("Reading § 1225 to encompass a subset of aliens present in the United States accords not only with the statute's text, but also with Supreme Court guidance.").

30

### ii.  Congress Intended to Distinguish "Seeking Admission" from "Applicants for Admission" in 8 U.S.C. § 1225(b)(2)(A).

After § 1225 defines an "applicant for admission," in subsection (a), subsection (b) then discusses, pursuant to its title, the "[i]nspection of applicants for admission."  8 U.S.C. § 1225(b).  Subsection (b) largely divides the inspection and detention of certain "applicants for admission" into two further subsections.  First, subsection (b)(1) pertains to arriving noncitizens and "certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1).  It also applies "to certain other aliens designated by the Attorney General in his discretion."  *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)).  No party has argued that § 1225(b)(1) is relevant here.[14]  Second, subsection (b)(2) regards noncitizens who are "an applicant for admission . . . seeking admission."  8 U.S.C. § 1225(b)(2)(A).  According to the Supreme Court, "Section 1225(b)(2) is broader."  *Jennings*, 583 U.S. at 287.  Specifically, "[i]t serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)."  *Id.* (citing 8 U.S.C. §§ 1225(b)(2)(A), (B)); *see also* Doc. 25 at 26-28, 30, 32-33.

The question, then, is *how* broad is § 1225(b)(2)'s "catchall" application?  That question is the root of this case, amongst many others across the country.  *See Romero*, 795 F. Supp. 3d at 273 (collecting cases); *Chen v. Soto*, No. 25-17198, 2025 WL 3527239, at *2 n.4 (D.N.J. Dec. 9, 2025) (same).  On the one hand, Respondents contend that "applicants for admission" are inherently "seeking admission."  *See* Doc. 21 at 12-15; *see also id.* at 23; *accord Hurtado*, 29 I&N Dec. at 229.  On the other hand, Petitioners argue that not all "applicants for admission" are

---

[14] Instead, the parties' arguments focus on the applicability of 1225(b)(2).  Nevertheless, it is necessary to understand the relationship between the two statutes, given the subsection at issue is "broader."  *Jennings*, 583 U.S. at 287; *see also* Doc. 25 at 32-33 ("After § 1225(b)(1) carries all of that water -- dividing applicants for admission into subgroups, specifying who is subject to expedited removal, and describing how certain aliens can seek asylum -- it is only then that § 1225(b)(2) comes over the horizon for consideration.").

"seeking admission," and, consequently, § 1225(b)(2) does not inherently apply to *all* "applicants for admission." *See* Doc. 1 at 11 ¶ 32 ("Class members were well inside the United States and cannot be said to be seeking admission."). For the reasons set forth below, the Court generally agrees with Petitioners that Congress intended to differentiate an "applicant for admission," from a noncitizen "seeking admission." Importantly, however, the Court declines to adopt the Petitioners' overly broad interpretation that noncitizens detained in the interior are never seeking admission by virtue of having effectuated an entry. *See id.*; *see also* Doc. 25 at 37 ("Although the phrase 'seeking admission' narrows the class of aliens to whom § 1225(b)(2) applies, it would be mistaken to read the provision as limited exclusively to physical border encounters.").

**Plain Text:** The Court again begins with a plain text review. As it must, the Court presumes that what Congress "says in a statute what it means and means in a statute what it says there." *Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)) (internal quotation marks omitted). Likewise, "'every clause and word of a statute' should have meaning." *U.S. ex rel. Polansky v. Exec. Health Res., Inc*., 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).

Section 1225(b)(2)(A) reads as follows:

> Subject to subparagraphs (B) and (C), in *the case of* an alien who is an applicant for admission, *if* the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added). To break it down, Congress first contextualizes the application to "applicant[s] for admission," generally.[15] *See* 8 U.S.C. § 1225(b)(2)(A) ("[I]n the

---

[15] The Court recognizes that multiple courts have cited *Jennings* for the broad proposition that 1225 applies to arriving aliens and 1226 applies to aliens already in the country. In *Jennings*, the Supreme Court did not state that § 1225(b) applies only to aliens seeking entry into the U.S.; instead, the *Jennings* Court stated that "§ 1225(b) applies *primarily*

case of an alien who is an applicant for admission . . . .").  Congress, then uses the conditional

term "if," to further narrow the application.  *See id.*  The condition of the narrowed scope is that

"the examining immigration officer" makes a determination.  *See id.* ("[I]n the case of . . ., *if* the

examining immigration officer determines that . . . .").  The determination the examining

immigration officer must make is whether "*an alien seeking admission* is not clearly and beyond

a doubt entitled to be admitted . . . ."  *See id.*  This determination is not to be answered to

"alien[s] seeking admission," generally, but only in the context of "applicants for admission."

*See id.*; *see also* Doc. 25 at 37 ("The phrase ['seeking admission'] therefore narrows the broader

universe of 'applicants for admission,' which encompasses everyone present in the United States,

who has not been admitted, and arriving aliens.").  Without becoming distracted by what it

means to "seek[ ] admission," the language demonstrates that Congress intended some form of a

distinction.  *See* 8 U.S.C. § 1225(b)(2)(A); *see also* Doc. 25 at 36-38 ("Section 1225(b)(2)(A)

distinguishes between the legal status of being an applicant for admission and the act of seeking

admission.").  Just as courts "have no right" to presume distinctions exist when a statute is silent,

*see Northwestern Nat. Life Ins. v. Riggs*, 203 U.S. 243, 252 (1906) ("The statute draws no

distinction between innocent and fraudulent misrepresentations, and the courts have no right to

draw any such distinction."), it follows, then, that courts have no right to presume a distinction

does not exist where Congress includes language indicating a designation.  *Cf. Pillsbury v.

United Eng'g Co.*, 342 U.S. 197, 199 (1952) ("We are not free, under the guise of construction,

to amend the statute by inserting therein before the word 'injury' the word 'compensable' so as

---

to aliens seeking entry . . . ."  583 U.S. at 297 (emphasis added); *see also Vargas Lopez*, 2025 WL 2780351, at *9 n.5 (D. Neb. Sep. 30, 2025).  Thus, the *Jennings* Court did not restrict the application of § 1225(b) only to aliens who are seeking entry into the United States or aliens who are near the border.  Under the plain statutory language of § 1225(a)(1) that defines "applicants for admission," § 1225(b) may also apply to those who are "present in the United States who ha[ve] not been admitted."  8 U.S.C. § 1225(a)(1).

to make 'injury' read as if it were 'disability.' Congress knew the difference between 'disability' and 'injury' and used the words advisedly.").

While Congress could have drawn (and defined) such a distinction with greater clarity, courts are charged with interpreting statutes, not (re)writing them. *See id.* In pursuit of its proper role, the Court must follow the interpretive principle that "every clause and word of a statute" has meaning. *Polansky*, 599 U.S. at 432 (quoting *Montclair*, 107 U.S. at 152) (quotation marks omitted); *see also* Doc. 25 at 26 ("The Court sees no reason to treat the insertion [of the phrase 'seeking admission' in § 1225(b)(2)(A)] as accidental or redundant."). If Congress intended for § 1225(b)(2) to apply to all other "applicants for admission" not otherwise detained pursuant to § 1225(b)(1), it could have done so. *Cf. Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *6 (5th Cir. Feb. 6, 2026) ("[I]f Congress had intended an alien 'seeking admission' to effectively mean 'arriving alien,' it would simply have said 'arriving alien.' Congress did not hesitate to use the 'arriving alien' language elsewhere in § 1225." (citing 8 U.S.C. §§ 1225(a)(2), (c)(1), (d)(2))). But that is not the present case. Instead, Congress chose a lengthier statute, and each word "should have meaning." *Polansky*, 599 U.S. at 432. Thus, Respondents' construction creates impermissible surplusage by overlooking any potential meaning behind the additional language to presume that the statutory designation of being an "applicant for admission" automatically equates "seeking admission."

**Avoiding Superfluity:** In further support, concluding otherwise would impermissibly render multiple subsections of 8 U.S.C. § 1226(c) superfluous. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3222 (2010) ("A contrary conclusion would violate the canon against interpreting any statutory provision in a manner that would render another provision superfluous."); *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an

34

interpretation would render superfluous another part of the same statutory scheme."); *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (reaching the same conclusion regarding the at-issue statutes). In brief, 8 U.S.C. § 1226(c) sets forth certain inadmissible or deportable noncitizens who are ineligible to be released on bond under § 1226(a), due to certain criminal offenses, and thus subject to mandatory custody. *See* 8 U.S.C. § 1226(c)(1)(A)-(E). Of these subsections, only §§ 1226(c)(1)(A), (D), and (E) discuss the mandatory detention of noncitizens deemed inadmissible under various subsections of 8 U.S.C. § 1182(a).[16] Although the named Petitioners are not subject to mandatory detention under § 1226(c), this subsection's multiple references to noncitizens who must remain detained due to certain causes for inadmissibility makes evident that 1226(a) may apply, *inter alia*, to noncitizens apprehended in the interior who were never inspected upon their entry. *See, e.g.*, 8 U.S.C. 1226(c)(1)(a), (d), (e)(i).

Moreover, 1226(a) cannot be read as an "exception" to 1225(b)(2).[17] Although § 1225(b)(2) does not define the length of such detention, the Supreme Court held in *Jennings* that

---

[16] First, 8 U.S.C. § 1226(c)(1)(A) mandates detention of any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title, is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," which generally discusses conviction for crimes of moral turpitude or regarding controlled substances. *See generally* 8 U.S.C. § 1182(a)(2). Second, 8 U.S.C. § 1226(c)(1)(D) mandates detention of any noncitizen who "is inadmissible under section 1182(a)(3)(B) of this title," which discusses terrorist activities. *See generally* 8 U.S.C. § 1182(a)(3)(B). Lastly, 8 U.S.C. § 1226(c)(1)(E) mandates the detention of any noncitizen who: "(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title;" (which respectively discuss noncitizens present without admission or parole, noncitizens who willfully misrepresent a material fact to seek or obtain immigration benefits (e.g., paperwork, admission) under Chapter 12, *see generally* 8 U.S.C. §§ 1182(a)(6)(A), (a)(6)(C), (a)(7)) and "(ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. § 1226(c)(1)(E)(i)-(ii), as defined "in the jurisdiction in which the acts occurred," 8 U.S.C. § 1226(c)(2).

[17] Sections 1225(b)(2) and 1226 have different, but overlapping, scopes. Section 1226 is a general provision that covers "alien[s]." 8 U.S.C. § 1226(a). This includes both noncitizens who have been lawfully admitted (such as those with visas or lawful permanent residence) and noncitizens in the country illegally. Section 1225(b)(2), by contrast, is a specific provision that covers the subset of noncitizens deemed "applicant[s] for admission." 8 U.S.C. § 1225(a). As described above, these are noncitizens "present in the United States who ha[ve] not been admitted or who arrive

§ 1225(b)(2) reads "most naturally" as *mandating* detention *through* the *conclusion* of removal proceedings.  *See* 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded.").  Although the Supreme Court recognized that § 1225(b) also fails to "say[] anything about bond hearings," the Supreme Court nevertheless held that outside of the one "express exception" codified in 8 U.S.C. § 1182(d)(5)(A) (allowing temporary parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit"), "there are *no other* circumstances under which aliens detained under § 1225(b) may be released."  *Jennings*, 583 U.S. at 300 (emphasis added).  The conclusion that bond (as opposed to parole) is entirely precluded under 8 U.S.C. § 1225(b)(2) is further supported by the precedential[18] immigration court findings that a noncitizen cannot switch detention from § 1225(b) to § 1226 by the post hoc issuance of a warrant.  *See Matter of Li*, 29 I&N Dec. 66, 71 n.4 (BIA 2025) ("Once an alien is detained under section [1225](b), DHS cannot convert the statutory authority governing her detention from section [1225](b) to section [1226](a) through the post-hoc issuance of a warrant.").

**Regulatory History:** Lastly, the Court recognizes that in *Leng May Ma v. Barber*, the Supreme Court found it "important to note" that:

> our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality.  In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'

---

in the United States." *Id.*  Because all "applicant[s] for admission," *see* 8 U.S.C. § 1225(a), are "alien[s]," *see* 8 U.S.C. § 1226, the statutes necessarily overlap.  *See also* Doc. 25 at 28.

[18] "'Precedential' is a specific term in immigration law, which identifies decisions from the BIA which are binding authorities on the U.S. Immigration Court.  The use of this term is not intended to imply that it is binding authority over this Court."  Doc. 21 at 11 n.3.

357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)).

Such a distinction was continued as a matter of administrative interpretation, as evidenced in the

1997 implementing regulation, which stated that "[d]espite being applicants for admission, aliens

who are present without having been admitted or paroled (formerly referred to as aliens who

entered without inspection) will be eligible for bond and bond redetermination."  IIRIRA

Implementation, 62 Fed. Reg. at 10323.

To conclude, the plain text of § 1225(b)(2) does not inherently indicate that it applies to

*all* "applicants for admission" as defined by 1225(a).  *See* 8 U.S.C. § 1225(b)(2)(A).  Rather, the

plain text indicates that 8 U.S.C. § 1225(b)(2)(A) mandates detention for "applicants for

admission" (as defined in § 1225(a)), who are not otherwise detained under 1225(b)(1), *and* are

"seeking admission."  *See* 8 U.S.C. 1225(b)(2)(A).

Having found that § 1225(b)(2)(A) applies to "applicants for admission," who are also

"seeking admission," the next question, naturally, is: what does "seeking admission" *mean*?  This

question goes to the heart of Respondents' argument that "applicants for admission" are

inherently "seeking admission."  However, the Court need not resolve that question at this

juncture.  Because statutes do not operate in a vacuum, *WesternGeco LLC v. ION Geophysical

Corp.*, 585 U.S. 407, 414 (2018) ("When determining the focus of a statute, we do not analyze

the provision at issue in a vacuum."), and because the Court understands the statutory schema to

prohibit the simultaneous application of § 1225(b)(2) and § 1226(a), *see Jennings*, 583 U.S. at

300, the Court now turns to the plain text of 8 U.S.C. § 1226.

### iii.  <u>Noncitizens Meeting the Requirements of 8 U.S.C. § 1226(a) are Entitled to a Bond Hearing</u>.

Section 1226(a) creates a discretionary framework regarding noncitizens arrested and

detained upon an arrest "warrant issued by the Attorney General."  8 U.S.C. § 1226(a).  The

Attorney General, "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500, or "may release the alien" on parole.  *Id.*  However, in contrast to many courts' assumptions, *see Hernandez v. Prindle*, No. 15-10, 2015 WL 1636138, at *2 n.1 (E.D. Ky. Apr. 13, 2015) ("[C]ourts often assume that § 1226(a) requires a bond hearing . . . ."), nothing in § 1226 explicitly requires a bond hearing.  *Aleman Gonzalez v. Barr*, 955 F.3d 762, 782 (9th Cir. 2020) ("The [*Jennings*] Court's rejection of our court's imposition of a six-month bond hearing requirement for aliens detained pursuant to § 1226(a) beyond the regulations' provision of a single bond hearing at the outset of detention is not the same as rejecting a construction of § 1226(a) to authorize or require bond hearings at all."); *Sulayao v. Shanahan*, No. 09Civ.7347, 2009 WL 3003188, at *7 (S.D.N.Y. Sep. 15, 2009) ("Nothing in the plain language of section 1226(a) requires that an alien detained pursuant to that statute be granted a bond hearing.").

Although the *Jennings* Court declined to decide whether the express statutory reference to "bond" in § 1226(a) requires an initial bond hearing, the Supreme Court recognized that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also* Doc. 25 at 34 n.16.  Such implementing regulations "must be interpreted so as to harmonize with and further and not to conflict with the objective of the statute [they] implement[ ]."  *Joy Techs., Inc. v. Sec'y of Labor*, 99 F.3d 991, 996 (10th Cir. 1996) (quotation marks and citation omitted); *cf. U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954) (establishing the *Accardi* doctrine, which sharply limits an agency's ability to simply ignore their own published rules that provide certain substantive rights).  Below, the Court sets forth the relevant regulations and their application.  In short, because the C.F.R. mandates the substantive right of a detention/bonding hearing for noncitizens arrested and detained pursuant to a warrant, that mandate remains

binding on Respondents until and unless the governing statutes and/or regulations are amended otherwise. Even then, the APA limits how an agency goes about undertaking and implementing such a major policy change. *See generally Masis Lucero v. Field Off. Dir. of Enf't & Removal Operations, Detroit Field Off., Immigr. & Customs Enf't*, No. 25-CV-823, 2025 WL 3718730, at *4-5 (S.D. Ohio Dec. 23, 2025) (analyzing *Regents*, 591 U.S. 1, which addressed DHS' abrupt termination of the Deferred Action for Childhood Arrivals program based on advice based on the Attorney General's opinion that the program violated the INA).

In general, when someone is first arrested by ICE, they are taken to a local ICE processing office where an ICE officer evaluates whether the noncitizen is eligible to be released from ICE custody and makes a custody determination (i.e., decides whether the person should remain in custody or should be released). 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The official issues Form I-286 ('Notice of Custody Determination') to memorialize and notify the noncitizen whether he will be detained in custody or released under an immigration bond. *See* 8 C.F.R. § 236.1(d)(1). Technically, this is the person's first custody determination. *See id.*; *Barrera v. McDonald*, No. 18-cv-12437, 2019 WL 4804854, at *1 n.1 (D. Mass. Sep. 30, 2019) ("Since ICE has the initial discretion of whether to grant bond to a § 1226(a) detainee, the first bond hearing before an immigration judge is considered a redetermination of the bond question."); *see also Cardona v. Ladwig*, No. 25-cv-01451, 2025 WL 3722009, at *7 n.12 (M.D. Tenn. Dec. 3, 2025) ("Notably, under INA regulations, a bond hearing occurs only after ICE has made its 'initial [discretionary] decision to detain'—the bond hearing is not itself an initial custody determination but an act of '*re*-determination.'" (emphasis and alteration in original) (citation omitted)). If bond is granted, the noncitizen may post the bond once served with Form I-862 ('Notice to Appear'). *See* 8 C.F.R. § 236.1(c)(8).

On the bottom of Form I-286 ('Notice of Custody Determination'), there is a checkbox to request a review of the custody determination in front of an IJ, unless federal law prohibits the noncitizen's release from custody, *see, e.g.*, 8 U.S.C. §§ 1226(c), 1231, or unless the noncitizen is in 'asylum only' proceedings or expedited removal, 8 U.S.C. § 1225(b)(1). 8 C.F.R. § 236.1(d)(1)-(2); *Miranda v. Garland*, 34 F.4th 338, 346-47, 364-65 (4th Cir. 2022) (discussing the ability of a noncitizen detained under § 1226 to seek release before an immigration officer, an IJ, and the BIA); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025) ("[T]hose detained under Section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order."). Upon submitting a custody redetermination request, an IJ schedules a custody/bond hearing, after which the IJ issues a custody/bond order. *See* 8 C.F.R. § 236.1(d)(2); *accord* 8 C.F.R. § 236.1(d)(1).

Although § 1226(a) provides the ICE officer (or other statutorily permissible official conducting the initial custody determination) discretion to deny issuing a bond, the IJ may grant bond on the custody redetermination request (or, where bond was initially granted, the IJ may reduce, maintain, or increase the bond amount). 8 C.F.R. § 236.1(d)(1) ("the immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released."); *S.D.B.B. v. Johnson*, No. 25-CV-882, 2025 WL 2845170, at *7 (M.D.N.C. Oct. 7, 2025) ("Although the statutory language itself suggests that the decision to grant or withhold bond is a discretionary act by the Attorney General, courts have generally found that alien detainees under § 1226 are entitled to a bond hearing."). After an initial bond redetermination before an IJ, any subsequent custody redetermination request(s) must be made in writing and show that the noncitizen's circumstances have changed materially since the prior bond hearing. 8 C F R § 1003.19(e).

Respondents' interpretation that *all* noncitizens who entered the U.S. without admission are subject to mandatory detention under § 1225(b)(2) to deny IJs' jurisdiction is too expansive because it violates the regulatory schema that ensure noncitizens who are properly detained under § 1226(a)—like Petitioner Castillo—the substantive right to seek bond.

### a.  Relief for Petitioner Castillo[19]

The undersigned finds that Petitioner Castillo was arrested and detained pursuant to a warrant, as required by 8 U.S.C. § 1226(a), and the governing regulations entitled Petitioner Castillo to a bond hearing.  Under the facts and circumstances, the undersigned further finds that Respondents' violation of 8 C.F.R. § 1236.1(c) entitles Petitioner Castillo to injunctive relief in the form of a writ of habeas corpus.

However, an IJ already found that Petitioner Castillo proved, by clear and convincing evidence, that he was neither a danger to society nor a flight risk and thus ordered Petitioner Castillo's release conditioned on a $20,000 bond and "ATD at DHS discretion," on August 28, 2025.  Doc. 1 at 6 ¶ 18, 15 ¶ 47; Doc. 4 at 44 ('Order of the Immigration Judge').  Petitioner Castillo's bond order was later usurped on purported jurisdictional grounds, but as established above, the Court finds that basis to be incorrect.  *Compare* Doc. 21-1 at 3-4 (BIA Order), *with supra* Section IV.A.3.i-iii.  Therefore, the undersigned recommends releasing Petitioner Castillo pursuant to the terms originally ordered by the IJ.[20]  *See Martinez-Elvir v. Olson*, No. 25-cv-589,

---

[19] Petitioner Castillo entered the U.S. on July 1, 2023, Doc. 1 at 14 ¶ 14, and DHS issued Petitioner Castillo a 'Notice to Appear' on January 2, 2025, which "charged him with being inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act," Doc. 4 at 23.  Although Petitioner Castillo was present in the U.S. for less than two continuous years before the date of determination of inadmissibility, Petitioner Castillo is not a candidate for mandatory detention under 8 U.S.C. § 1225(b)(1) (as opposed to subsection (b)(2)), because Petitioner Castillo was not deemed inadmissible under 8 U.S.C. § 1182(a)(6)(c) or 8 U.S.C. § 1182(a)(7), as § 1225(b)(1)(a)(i) requires.  *But cf.* Doc. 25 at 28-30, 78.

[20] Petitioners do not assert a due process challenge in Count I.  Therefore, the Court declines to sua sponte address the potential due process concerns, such as the *Accardi* doctrine.  But even if Petitioners had raised a due process claim, the Court's analysis can still end as is, because the Court grants the relief Petitioner Castillo seeks based on the

2025 WL 3006772, at *13 (W.D. Ky. Oct. 27, 2025) (affirming release pursuant to requirements set forth by IJ); *Puerto-Hernandez v. Lynch*, No. 25-cv-1097, 2025 WL 3012033, at *11 (W.D. Mich. Oct. 28, 2025) ("Because the IJ is in the better position to evaluate whether Petitioner poses a flight risk and a danger to the community, the Court defers to the IJ's sound discretion and will order Petitioner's immediate release on the terms set by the IJ, including the bond of $5,000."); *see also* Doc. 25 at 102 n.28.

### b. Relief for Petitioner Loza

Because the text of 8 U.S.C. § 1226(a) preconditions the section's application to noncitizens arrested and detained pursuant to a warrant issued by the Attorney General, and because Petitioners fail to state that Petitioner Loza was arrested pursuant to a warrant, *see generally* Doc. 1, the Court finds that Petitioner Loza is not eligible for relief under Counts I or II.

A warrant is required unless an immigration officer apprehends a noncitizen while the noncitizen is entering, attempting to enter, or is present in the U.S. in violation of the immigration laws. 8 U.S.C. § 1357(a)(2) ("Any officer . . . shall have power without warrant . . . to arrest any alien in the Unites States, if he has reason to believe that the alien so arrested is in the United States in violation of [immigration laws] and is likely to escape before a warrant can be obtained for his arrest."). Assuming that is the basis for the arrest, 8 C.F.R. § 287.3 then regulates how officers proceed after they effect that warrantless arrest. Most relevant to the issue at hand, § 287.3(d) governs custody procedures and states, "a determination will be made within 48 hours of the arrest [except in cases not relevant here] whether a notice to appear and warrant

---

applicability of § 1226(a). *See Hernandez v. Baltazar*, No. 25-cv-03094, 2025 WL 2996643, at *8 (D. Colo. Oct. 24, 2025) ("However, the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a).").

of arrest as prescribed in 8 CFR parts 236 and 239 will be issued."  Turning to the referenced §

236, particularly § 236.1(c)(8), "[a]ny officer authorized to issue a warrant of arrest may, in the

officer's discretion, release an alien not described in [8 U.S.C. § 1226(c)(1)], under the

conditions at [§§ 1226(a)(2) and (3)]; provided that the alien must demonstrate to the satisfaction

of the officer that such release would not pose a danger to property or persons, and that the alien

is likely to appear for any future proceeding."  That regulation also dictates that ICE will utilize

Forms I-200 ('Warrant of Arrest') and I-286 ('Notice of Custody Determination').  8 C.F.R. §§

236.1(b)(1), (g)(1).

     If an arrest is made without a warrant, the government must "without unnecessary delay"

have an officer examine the arrested individual "as to [the individual's] right to enter or remain

in the United States."  8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.3(a) (providing that "an

alien arrested without a warrant . . . will be examined by an officer other than the arresting

officer" but "the arresting officer" may conduct the examination "if taking the alien before

another officer would entail unnecessary delay").  Upon finding "prima facie evidence that the

arrested alien was entering, attempting to enter, or is present in the United States in violation of

the immigration laws," the examining officer must: refer the case to an IJ; order the individual

removed on an expedited basis, pursuant to 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 235.3(b); or

take other action as authorized by relevant law and regulations.  8 C.F.R. § 287.3(b).

Importantly, within 48 hours of the arrest without a warrant, the officer must determine "whether

the individual will be continued in custody or released" and whether to issue a notice to appear

and an arrest warrant.  8 C.F.R. § 287.3(d).

     However, no warrant of *any* kind for Petitioner Loza's arrest has been submitted to the

record in this case.  In fact, Petitioner Loza entirely fails to allege anywhere in the Petition that

he was arrested on a warrant. *Cf. Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1139 (D. Neb. 2025) ("No warrant of any kind for [Petitioner]'s arrest has been submitted to the record in this case. Indeed, [Petitioner] does not allege anywhere in his Petition that he was arrested on a warrant.") In these circumstances, this Court is unable to defer to or even assess the IJ's findings on the existence of a warrant or its basis for Petitioner Loza's arrest. *See id.*

Previously, the undersigned recommended that Petitioner Loza be granted a bond hearing. *See* Doc. 8 at 11, 19-21. That recommendation, however, was issued at the temporary-restraining-order stage and rested on a likelihood-of-success analysis, not a determination of statutory entitlement on the merits. The Court finds that the two recommendations are not in conflict because Petitioners will foreseeably resolve the insufficient pleadings underpinning the present recommendation. Since amendment is not futile, the undersigned recommends dismissing Count I, as it applies to Petitioner Loza, individually, without prejudice.

### 4. Count II: Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*

Petitioners also assert that their detention under § 1225(b)(2) constitutes a violation of the APA, 5 U.S.C. § 551 *et seq. See* Doc. 1 at 20 ¶¶ 69-72 (Count II). Under the APA, a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, Respondents argue that "Petitioners do not have standing to bring claims under the APA." Doc. 21 at 24. Such a standing challenge is properly analyzed under Rule 12(b)(1). *Cf. Birse v. CenturyLink, Inc.*, No. 17-cv-02872, 2018 WL 6603961, at *2 (D. Colo. Nov. 19, 2018) ("Though not raised by Defendants, Rule 12(b)(1), rather than Rule 12(b)(6), of the Federal Rules of Civil Procedure applies to a standing challenge."), *report and recommendation adopted in part, rejected in part sub nom.*, 2019 WL 1292861 (D. Colo. Mar. 20, 2019).

"[C]laims under the APA are not available when there is another 'adequate remedy in a court,' . . . ." *Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Here, habeas corpus is the proper vehicle. *See id.* ("[H]abeas corpus, not the APA, is the proper vehicle here."). Petitioners fail to persuade how the Court's analysis and recommendation for declaratory relief with respect to Count I fail to fulfill their express intention of scrutinizing "Defendants' policy and practice," in Count II. Doc. 22 at 7 (claiming, without any citations or authority, that "the APA and Habeas serve two completely different purposes and are not adequate substitute for one another. An APA challenge seeks to challenge agency action and invalidate unlawful interpretations of the law. Habeas is confined and limited to detention legality. A habeas does not invalidate agency policy or practice, prevent future application or provide systemic relief.").

It is unclear whether Petitioners' argument is based upon the fact that "Rule 23 class actions are technically inapplicable to habeas corpus proceedings." *Napier v. Gertrude*, 542 F.2d 825, 827 n.2 (10th Cir. 1976). The Tenth Circuit has recognized this legal reality and explained that courts may nevertheless proceed by "apply[ing] an analogous procedure by reference to Rule 23 in proper circumstances." *Id.* In other words, the Court is not precluded from applying Rule 23 in certifying a class in the habeas context. *See id.*; *Mendoza Gutierrez v. Baltasar*, No. 25-CV-2720, 2025 WL 2962908, at *12 (D. Colo. Oct. 17, 2025) (holding, in comparable immigration case, that "even if Plaintiff is seeking to certify the class in a habeas context, the Court may apply Rule 23." (citation omitted)). But the Court is not reviewing the proposed "Bond Denial Class" at this time. With respect to the named Petitioners, then, the undersigned recommends dismissing Count II for lack of standing under Fed. R. Civ. P. 12(b)(1).

**B. <u>Writ of Mandamus: Bond Appeal Claims</u>**[21]

Counts III and IV raise issues appropriately suited for analysis under the writ of mandamus standard, since both counts ultimately seek to compel Respondents to perform their duty of timely resolving Immigration Court appeals. *See* Doc. 1 at 20-21 ¶¶ 73-76 (Count III); *id.* at 21-22 ¶¶ 77-81 (Count IV); *accord* 28 U.S.C. § 1361.

These counts address the length of appellate review of custody determination, *see id.* at 20-22 ¶¶ 73-81 (Counts III and IV), by both the BIA, generally, and "OPLA's automatic-stay practice," *id.* at 4 ¶ 9. Regarding the latter cause of delay, Petitioners claim that OPLA adopted a new practice to unilaterally override any favorable bond determinations by filing Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination') to contest an IJ's 8 U.S.C. § 1226(a) jurisdiction (and thus any favorable bond rulings), which triggers the automatic stay provisions of 8 C.F.R. § 1003.19(i)(2). Doc. 1 at 2 ¶ 5, 3 ¶ 7. Based on this new practice, Count III claims that the BIA's "failure to provide timely appellate review, in cases where liberty has been curtailed through an EOIR-43 automatic stay, violates the Due Process Clause of the Fifth Amendment." *Id.* at 21 ¶ 76. Because Count III appears to only attack the length of time resolving an appeal when DHS has filed Form EOIR-43 to invoke the automatic stay of 8 C.F.R. § 1003.19(i)(2), Count III does not apply to Petitioner Loza, given that the Petition fails to allege that such conduct occurred during Petitioner Loza's Immigration Court proceedings. Further, Count IV alleges that where physical liberty is at issue, "a reasonable time for appellate review of a civil-detention is not more than thirty (30) days from filing of the notice of appeal, while the

---

[21] Critically, Counts III only applies to Petitioner Castillo. *Contrast* Doc. 1 at 6-7 ¶ 18 (stating Petitioner Castillo successfully appealed but was then impacted by DHS appealing and filing Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination')), *with id.* at 7 ¶ 19 (discussing Petitioner Loza, with no mention of any appeal or DHS filing Form EOIR-43 as it applies to him), *and id.* at 16-17 ¶¶ 52-54 (same). Therefore, Petitioner Loza is not entitled to relief under Count III.

individual remains detained," *id.* at ¶ 79, but that such review (which is "often stayed automatically by OPLA's EOIR-43 filings," *id.* at 22 ¶ 80), "regularly extends well beyond thirty (30) days," *id.*  It appears, then, that Count IV attacks the length of time to resolve appeals both generally and when the automatic stay is invoked.

### 1.  **Legal Background**

Prior to 2001, noncitizens subject to discretionary detention under 8 U.S.C. § 1226(a) who were granted bond by an IJ remained detained only if the BIA granted a request to stay the bond order.  *See* Executive Office for Immigration Review; Review of Custody Determinations, 66 Fed. Reg. 54909, 54910 (Oct. 31, 2001).  In 2001, the Immigration and Naturalization Service ("INS") (now DHS) implemented an "interim rule" to expand its authority to issue automatic stays of IJs' custody/bond decisions pending their appeal.  *Id.*  Therein, the INS stated that this automatic stay was "a limited measure," to be used only "where the Service determines that it is necessary to invoke the special stay procedure pending appeal . . . ."  *Id.*

In 2006, EOIR promulgated the final and current rule, which added the requirement that to preserve the automatic stay, the attorney for DHS must file, with the notice of appeal, a certification by a senior legal official under 8 C.F.R. § 1003.6(c).  Executive Office for Immigration Review; Review of Custody Determinations, 71. Fed. Reg. 57873, 57884 (Oct. 2, 2006).  This certification requirement was added "to allay possible concerns that in some case[s] the automatic stay might be invoked . . .  without an adequate factual or legal basis . . . ."  *Id.* at 57874.  The certification must state:

> (i)  the official has approved the filing of the notice of appeal according to review procedures established by DHS; and
>
> (ii) the official is satisfied that the contentions justifying the continued detention of the alien have evidentiary support, and the legal arguments are warranted by

existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent.

8 C.F.R. §§ 1003.6(c)(1)(i)-(ii).  The automatic stay will lapse after ten days if DHS fails to timely file the notice of appeal and certification.  8 C.F.R. §§ 1003.6(c)(1).

Assuming certification has been properly tendered, the stay lapses in ninety days absent a BIA decision, unless the detainee seeks an extension of time to brief the custody appeal, 8 C.F.R. § 1003.6(c)(4), or unless DHS seeks, and the BIA grants, a discretionary stay.  *See, e.g.*, 8 C.F.R. § 1003.19(i)(1).  Moreover, seeking this discretionary stay automatically extends the stay for an additional 30 days while the BIA decides the request for discretionary stay.  8 C.F.R. § 1003.6(c)(5).  If the BIA authorizes a noncitizen's release (on bond or otherwise), denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the noncitizen's release shall be automatically stayed for five business days.  8 C.F.R. § 1003.6(d).  During that period, DHS can choose to refer the bond decision to the Attorney General, which extends the automatic stay for another 15 business days.  8 C.F.R. § 1003.6(d).  The Attorney General can then extend the stay for the pendency of the custody proceedings.  8 C.F.R. § 1003.6(d).

While the favorable bond determination is on appeal, detainees remain in custody. However, such continued confinement may continue for months, and deportation proceedings may still ensue.  But as Respondents' note, "regulations require DHS to perfect the appeal and require the BIA to track the progress of the custody appeal 'to avoid unnecessary delays in completing the record for decision.'"  Doc. 21 at 13 (quoting 8 C.F.R. § 1003.6(c)(3)).

### 2. <u>Count III: Fifth Amendment Due Process Clause</u>

Petitioner Castillo argues that his continued detention, by virtue of the automatic stay invoked by Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination'), violates his

procedural and substantive due process rights guaranteed by the Fifth Amendment.  Doc. 4 at 5.

The Fifth Amendment's Due Process Clause prohibits deprivations of life, liberty, and property

without due process of law.  *See* U.S. CONST. amend. V.  The Due Process Clause extends to all

persons, including non-citizens, regardless of their immigration status.  *J.G.G.*, 604 U.S. at 673

("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the

context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))).

To determine whether detention violates procedural due process, courts apply the

*Mathews v. Eldridge* three-part balancing test.  *See generally* 424 U.S. 319 (1976).  However, the

Court need not apply the *Mathews* factors, because as discussed below, the claims regarding the

automatic stay are moot.  *See infra* Section IV.B.4.

### 3.  Count IV: Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*

Petitioner Castillo also argues that Respondents' invocation of the automatic stay is

arbitrary and capricious, in violation of the APA.  *See* Doc. 1 at 21-22 ¶¶ 77-81.  Under the APA,

a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

However, Respondents argue that "Petitioners do not have standing to bring claims under the

APA."  Doc. 21 at 24.  Such a standing challenge is properly analyzed under Rule 12(b)(1).  *Cf.*

*CenturyLink*, 2018 WL 6603961, at *2 ("Though not raised by Defendants, Rule 12(b)(1), rather

than Rule 12(b)(6), of the Federal Rules of Civil Procedure applies to a standing challenge.").

However, "claims under the APA are not available when there is another 'adequate

remedy in a court,' . . . ."  *J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring).  Here, looking

past the general mootness of Petitioner Castillo's claims regarding the automatic stay, *see infra*

Section IV.B.4, the proper vehicle was a writ of mandamus.  *Cf. J.G.G.*, 604 U.S. at 674

(Kavanaugh, J., concurring).  The same is true with respect to Petitioners' claim of general delay.
*See id.*; *South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018) ("[C]laims of
unreasonable delay can be properly addressed through a mandamus proceeding . . . .").

### 4.  Relief is Moot[22]

For a case to be sufficiently justiciable, it requires a live, redressable injury at the time of
the court's decision.  *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (holding that
a plaintiff has standing to seek declaratory and injunctive relief if he alleges "a direct and current
injury" and his injury at the time of the complaint is "capable of being redressed through
injunctive relief.").

Although the capable of repetition yet evading review exception to the mootness doctrine
exists, that exception "applies only in exceptional situations," *City of L.A. v. Lyons*, 461 U.S. 95,
109 (1983), "where two elements [are met]: (1) the challenged action was in its duration too
short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable
expectation that the same complaining party would be subjected to the same action again,"
*Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149
(1975) (per curiam)).  Petitioners have failed to sufficiently demonstrate that there exists a
reasonable expectation that Petitioner Castillo will again be subjected to DHS filing Form EOIR-
43 ('Notice of Intent to Appeal Custody Redetermination') to invoke the automatic stay
provisions of 8 C.F.R. § 1003.19(i)(2).  First, those provisions only apply in the bond hearing
context.  Second, the undersigned recommended releasing Petitioner Castillo and further
recommended declaratory relief that 8 U.S.C. § 1225(b)(2) does not deprive jurisdiction of bond

---

[22] As mentioned, of the two named Petitioners, the issues pertaining to the automatic stay unilaterally imposed by
DHS filing Form EOIR-43 ('Notice of Intent to Appeal Custody Redetermination') only impacts Petitioner Castillo.
*Infra* Section IV.B.  Therefore, Petitioner Loza is not entitled to relief on Count III.

hearings for all "applicants for admission." Such relief diminishes the likelihood of reoccurrence.

Therefore, "the entry of a declaratory judgment . . . would amount to nothing more than a declaration that [Petitioner Castillo] was wronged, and would have no effect on the defendants' behavior towards him." *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997). Accordingly, the Court concludes that Claims III and IV are now moot as they apply to Petitioner Castillo individually. *Cf. Khan v. Barela*, No. 15-1151, 2016 WL 9777259, at *5 (D.N.M. Sep. 30, 2016) (citing *Green*, 108 F.3d at 1299).

## V.  RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that Petitioners' 'Class Action Complaint and Petition for Writ of Habeas Corpus' (Doc. 1) and Respondents' *Motion to Dismiss Class Action Complaint and Petition for Writ of Habeas Corpus* (Doc. 21) both be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned recommends addressing the counts as follows:[23]

1. Count I, with respect to Petitioner Castillo, individually: **GRANT INJUNCTIVE RELIEF** in the form of a writ of habeas corpus, *accord* 28 U.S.C. § 2241, pursuant to the IJ's 'Bond Order' issued April 28, 2025 (Doc. 4 at 44-45), which conditioned Petitioner Castillo's release upon a $20,000 bond and "ATD at DHS discretion." Doc. 4 at 44.

2. Count I, with respect to Petitioner Castillo, individually: **GRANT DECLARATORY RELIEF** in the form of concluding that Respondents' application of 8 U.S.C. § 1225(b)(2)(A) to preclude any possibility of bond for noncitizens present in the U.S.

---

[23] To clarify, the undersigned's recommendations are limited to the Petition's application to the named Petitioners, only. The undersigned's findings did not include a Rule 23 class certification analysis since this PFRD only addresses Respondents' *Motion to Dismiss* (Doc. 21), premised on Rule 12(b). *See supra* Section IV.

without admission is overly broad and violates the right to a bond hearing under 8 C.F.R. § 1236.1 for noncitizens qualifying for detention under 8 U.S.C. § 1226(a).

3. Count I, with respect to Petitioner Loza, individually: **DISMISS WITHOUT PREJUDICE** for insufficient pleadings under FED. R. CIV. P. 12(b)(6), including any request for injunctive relief requiring a bond hearing or release on bond.

4. Count II, with respect to both named Petitioners, individually: **DISMISS WITH PREJUDICE** for lack of standing under FED. R. CIV. P. 12(b)(1).

5. Count III, with respect to Petitioner Castillo, individually: **DISMISS AS MOOT** under FED. R. CIV. P. 12(b)(1).

6. Count IV, with respect to both named Petitioners, individually: **DISMISS AS MOOT** under FED. R. CIV. P. 12(b)(1).

The undersigned further recommends **DIRECTING** the Clerk's Office to amend the case caption and docket to reflect Petitioner Castillo's full name as "Antonio Adrian Castillo."

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---